C. F. LYTLE, Appellant, v. MAX W. SMITH, Appellee.

**TRADE-MARKS AND TRADE NAMES:** Unfair Competition. Employing the business name of "Jasper Products Company" in the sale of jasper stone as "Jasper silica" does not constitute unfair trade as regards an existing business carried on under the name of "Jasper Stone Company," and engaged in selling the same article as "adamant silica," complainant establishing neither fraud nor deception calculated to reasonably mislead.

Headnote 1: 38 Cyc. p. 821.

Headnote 1: 26 L. R. A. (N. S.) 78; 26 R. C. L. 675 *et seq.*

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

. OCTOBER 25, 1927.

Plaintiff commenced action to enjoin defendant from engaging in unfair competition. For failure to obtain relief this appeal was taken.—*Affirmed.*

*Edwin J. Stason,* for appellant.

*Brackney, Farr & Stockman,* for appellee.

KINDIG, J.—This is an equity action, brought for the purpose of restraining the defendant, appellee, from transacting business under the firm name of Jasper Products Company, on the theory that such conduct amounted to unfair competition with the plaintiff, appellant, who was operating as the Jasper Stone Company. Decree in the district court was adverse to appellant's claim; hence this appeal.

Historically, the facts are: C. F. Lytle, the appellant, became interested in the stone business at Jasper, Minnesota, in 1912, and afterward, in 1915, purchased a quarry known as the Jasper Stone Company quarry. Said stone was a pink quartzite, called by some, "Sioux Falls granite." During said time, there were other similar beds or mines at or near the same town. Appellant first prepared for sale a crushed stone, but in 1916, he

commenced to make and place upon the market "grinding cubes and blocks" (used by cement mills, silica, and paint concerns). That last named product previously was cut in Germany, Belgium, and Norway, and from there shipped to America. The war, however, interrupted these foreign operations, and industries of the United States became interested in American production, resulting in orders therefor being supplied by appellant. In 1919, appellee was employed by said Lytle to assist in the management of the plant, and so continued until 1922, when, after a brief engagement in the oil business, he established for himself a new enterprise, under the designation above indicated, to wit, "Jasper Products Company," offering to the public stone goods specifically advertised as Jasper silica; while appellant continued to sell his wares by the trade style of "adamant silica." Foundation for this proceeding is based, not upon the right acquired by a trade name, but rather on the principle of "unfair trade." For years we have recognized the distinction. *Sartor v. Schaden,* 125 Iowa 696; *Atlas Assur. Co. v. Atlas Ins. Co.,* 138 Iowa 228; *Dyment v. Lewis,* 144 Iowa 509; *Iowa Auto Market v. Auto Market & Exch.,* 197 Iowa 420; *Motor Accessories Mfg. Co. v. Marshalltown M. M. Mfg. Co.,* 167 Iowa 202. Such unfairness has two angles: one relating to deception in imitating the goods of another, so that the public will purchase the counterfeit, rather than the real, and the other has reference to a camouflage produced by transacting business under a similar name, and thereby causing the people to believe the substitute to be the original. *Dyment v. Lewis,* supra. Fundamentally, the property acquired in a business "trade name" need not be limited to the narrow margin permitting arbitrary acquisition of a trade-mark (*Iowa Auto Market v. Auto Market & Exch.,* supra), but may be extended to the appropriation of descriptive terms or other words made personal by long use in connection with the goods or business of the particular owner, culminating in a "secondary right." *Iowa Auto Market v. Auto Market & Exch.,* supra; *Sartor v. Schaden,* supra; *Dyment v. Lewis,* supra. No two cases are alike, and the criterion in each is: Does the resemblance mislead, or is it such as to deceive those who are acting with ordinary and reasonable caution? *Iowa Auto Market v. Auto Market & Exch.,* supra, and kindred cases. There is no contention in the case at bar that the article offered for sale was

objectionable because a "counterfeit or an imitation." Those grinding cubes and blocks were not peculiar to appellant's business, but were standard articles, manufactured in America and Europe. Our consideration, because of this, must be confined to a discussion of the likeness in "name." Parenthetically, it is well to note that the record fails to disclose appellee's borrowing or otherwise taking any name of a customer from appellant's mailing list. They were procured from directories. Although an effort was made to introduce some evidence, yet it was by no means established that a single customer dealt with appellee under the misapprehension that he was dealing with appellant. Only a few instances were shown in the record where communication was received by the wrong party. However, in every case this was immediately corrected. Conceding proof of damages or actual deception is not a necessary burden to be carried by appellant, and he has made his case when the record shows a sameness capable of and likely to mislead and confuse anyway, his attempt and failure have their bearing and significance. *Iowa Auto Market v. Auto Market & Exch.*, supra. Confusion, if any there was, did not amount to more than that usually experienced by all manufacturers.

Jasper is a geographical term, and it designated the location of appellant's quarry. Furthermore, there also appellee conducted a quarry for a time, and afterward procured said merchandise therefrom, through other companies, while he (appellee) was bringing forth the product at Sioux Falls, South Dakota. Not only does "Jasper" stand for the name of a town, but it has a distinct meaning in the mineral world. The dictionary defines it as an opaque, many-sided variety of quartz; when polished it is made into a variety of ornamental articles. And the record supplied the following definition:

"An opalescent stone that takes a high polish, and its particular ingredient is silica."

Moreover, "jasper" is known as a special stone by the railroads, and they have provided freight schedules therefor. That was the very product which appellee was selling.

Continuing the argument, appellant urges that there was actual or implied fraud in the advertising matter used by appellee. Ordinary business letterheads were utilized. On the one employed by appellant was written at the top "Jasper Stone

Company,'' below which, in smaller type, appeared ''adamant silica;'' while on appellee's stationery there was the heading ''Jasper Products Company,'' and in lesser type beneath, ''Jasper silica.'' At the left of each sheet was printed advertisement, but the general make-up, type, and style are different. The subject-matter written about being the same cubes and blocks, necessarily the result of the general meaning of the language used would express the same thought, in part. Appellee did not write his own advertisement, but sent the facts to a printing concern in St. Louis, where the words were put together and the ideas expressed. Consequently, we cannot say, as a matter of law, and the record does not reveal the fact, that ''Jasper Stone Company,'' offering ''adamant silica,'' was, or probably would be, mistaken for ''Jasper Products Company,'' presenting ''Jasper silica.'' *Motor Accessories Mfg. Co. v. Marshalltown M. M. Mfg. Co.*, supra; *Iowa Auto Market v. Auto Market & Exch.*, supra.

Judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

EVANS, C. J., and STEVENS, FAVILLE, and WAGNER, JJ., concur.