## Philadelphia Dairy Products *v.* Quaker City Ice Cream Co., Appellant.

166

Argued November 30, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

168

*Harry Shapiro*, for appellant.—Price competition and solicitation of trade from dealers under exclusive contract with complainant does not constitute unfair competition by unlawful interference with contract: Citizens L., H. & P. Co. v. Light & Water Power Co., 171 Fed. 553; Buchanan v. Kerr, 159 Pa. 433.

The decree is improper because based on facts neither averred nor proved, and because not included in relief prayed for: Levy's Est., 273 Pa. 148; Spangler Brewing Co. v. McHenry, 242 Pa. 522.

Dealers' use of plaintiff's cabinets for storing of defendant's ice cream did not constitute unfair competition by defendant, especially as contract contained no such negative covenant.

Defendant did not solicit or induce dealers to sell defendant's ice cream as that of plaintiff, nor aid, abet or enable dealers to do so, nor did dealers do so: B. V. D. v. Kaufmann & Baer Co., 272 Pa. 240; Hohenstein v. Perelstine, 37 Pa. Superior Ct. 540; Scranton Stove Works v. Clark, 255 Pa. 23; Schmick v. Broom Works,

79 Pa. Superior Ct. 331; Ogilvie Pub. Co. v. Pub. Co., 241 Pa. 5.

Plaintiff was guilty of misrepresentation and unclean hands in display advertising matter it furnished to dealers: Dixon Crucible Co. v. Guggenheim, 2 Brewster 321; Palmer v. Harris, 60 Pa. 159, 160; Holzapfels v. Rahtjens Co., 183 U. S. 1; Manhattan Medicine Co. v. Wood, 108 U. S. 218, 222; Worden v. California Fig Syrup Co., 187 U. S. 516.

The authorities are clear that the principle of unclean hands is not a defense but a bar, and need not be pleaded: Memphis Keeley Institute v. Keeley Co., 155 Fed. 964; Bell & Howell Co. v. Bliss, 262 Fed. 131, 135; Ad-Lee v. Meyer, 294 Pa. 498.

*Samuel Kagle,* with him *George C. Klauder,* for appellee.—Defendant was guilty of unfair competition with plaintiff and the decree enjoining such unfair competition was proper: Schmick v. Broom Works, 79 Pa. Superior Ct. 331; B. V. D. Co. v. Kaufmann & Baer Co., 272 Pa. 240; Bobrow v. Manekin, 59 Pa. Superior Ct. 334; Klepser v. Furry, 289 Pa. 152; Elliott Co. v. Skillkrafter, Inc., 271 Pa. 185.

Defendant used unlawful means and unfair methods to induce a breach of an exclusive written contract and the injunction to restrain such acts was proper: Freedom Oil Works v. Williams, 302 Pa. 51; McLaughlin v. Monaghan, 290 Pa. 74; Shannon v. Early F. Co., 296 Pa. 141; Slemmer's App., 58 Pa. 155.

The court below properly enjoined defendant from continuing trespasses on plaintiff's property and property rights: Fuller v. Fisk, 43 Pa. Superior Ct. 489; Whitmore v. Heeter, 58 Pa. Superior Ct. 342.

Appellant's contention that the unclean hands doctrine should have been invoked because of misrepresentation, is without merit.

OPINION BY MR. JUSTICE MAXEY, January 5, 1932:

The plaintiff charges the defendant with unfair competition. Both are engaged in the manufacture and sale of ice cream. The unfairness as revealed by the evidence consists of: First, the sale of ice cream by the defendant to dealers when these dealers were under contractual obligations to buy ice cream only from the plaintiff; second, the use by the defendant of cabinet-containers for the storage of ice cream in stores when these cabinets belonged to the plaintiff and bore plaintiff's name; third, the use by defendant of plaintiff's cans, bearing plaintiff's name, for the containing and delivering to dealers of defendant's ice cream; fourth, the sale to dealers of defendant's inferior ice cream at a cut price in stores where plaintiff's superior ice cream was and had long been sold at a higher price and in which stores plaintiff's advertising matter was and long had been prominently displayed at plaintiff's expense. Plaintiff averred irreparable damage in that the public was deceived into believing the defendant's ice cream was plaintiff's, thereby damaging the reputation of plaintiff's products and causing plaintiff loss of patronage, and in that the use by defendant of plaintiff's cans and cabinets was an invasion of plaintiff's property rights.

The court below enjoined the defendant in substance as follows: First, from using any illegal means or unfair methods in selling its ice cream to persons having agreements with the plaintiff to sell the latter's ice cream exclusively and from causing such persons to violate their exclusive sales agreements with the plaintiff, by selling its product to plaintiff's dealers at a lower price than the dealer paid plaintiff for its ice cream and under such conditions and circumstances as will afford opportunity to plaintiff's dealers to substitute defendant's product for that of the plaintiff and for selling it as such to the public; second, from using any

illegal means or unfair methods in selling its ice cream to any persons engaged in selling plaintiff's ice cream, as by defendant selling its product to plaintiff's dealers at a lower price than the dealers pay plaintiff for its product; third, from making use, directly or indirectly, of plaintiff's ice cream cabinets, its cans or any other equipment furnished by the plaintiff to its dealers; fourth, defendant was ordered to pay the costs of this proceeding.

The first and second paragraphs of the injunctive decree cannot be sustained. They are in part too indefinite in character. To enjoin persons from using "illegal means or unfair methods" without specifying what these means and methods are is as meaningless as it would be to pass a law making it a crime to do "wrongful acts" without specifying what they were. So far as these injunctions attempt to restrain the defendant from selling ice cream to persons having agreements with the plaintiff, at a lower price than the dealer paid plaintiff for its product, they must also fall.

There is no law which prevents the manufacturer of a product from selling that product to a dealer with whom another manufacturer has an exclusive contract, known to the first manufacturer, to supply the dealer with a similar product. Any proposal of such a law would call for instant rejection as imposing an unwise and impracticable restriction on freedom of trade and competition. The ownership of property ordinarily carries with it the right of sale and a court of equity will not restrain such sale except under circumstances not present here even though some other person's interests might be prejudiced by that sale, as, for example, the loss of customers which may be bound to that other person by contract. In the case of Citizens' Light, Heat and Power Co. v. Montgomery Light & Water Power Co., 171 Fed. 553, at 560, Judge JONES of the Northern and Middle District of Alabama aptly says: "At com-

mon law a trader, or person in other calling, in order to get another man's customers, could use any means not involving violation of the criminal laws, or amounting to 'fraud,' 'duress,' or 'intimidation,' as the law understands and applies those terms to transactions between man and man, or to his becoming a wrongful party to a breach of another man's contract. The trader may boast untruthfully of the merits of his wares, so long as it does not take the form of false statements, amounting to slander or wilful misrepresentation of the quality of a rival product, or a libel upon the character, business standing and credit of his rival, or an effort to induce the public to believe that the product he sells is that manufactured and sold by the rival. He may send out circulars, or give information verbally, to customers of other men, knowing they are bound by a contract for a definite term, although acting upon the expectation and with the purpose of getting the trade of such persons for himself. He may use any mode of persuasion with such a customer, keeping within the limitations stated, which appeals to his self-interest, reason, or even his prejudices. He may descant upon the extent of his rival's facilities compared with his own, his rival's means, his insolvency, if it be a fact, and the benefits which will result to the customer in the future from coming to the solicitor rather than remaining where he is. He may lawfully, at least so far as his rival is concerned, cut prices to any extent, to secure his trade. So long as what he does is done to benefit his own trade, and, in taking over the customers of another, he keeps within the limitations heretofore defined, he is safe from legal restraint at the instance of a competitor in following 'the law of competition,' which takes little note of the ordinary rules of good neighborhood or abstract morality. The person whose customers are thus taken from him cannot complain, for no right of action lies in his favor against him who solicited his customer,

since the solicitor exercised a legal right in a legal way, and the exercise of a legal right in a legal way, for a lawful purpose, will not give a cause of action."

It may be argued that the defendant falls within the above exceptions in that it made an effort to induce the public to believe that the product it sells was the product manufactured and sold by the plaintiff. The answer to that is, if there was any such effort to deceive the public, the dealers to whom the defendant sold its product and not the defendant itself were legally responsible for it. These dealers permitted their customers to come into their places of business where plaintiff's ice cream was and had long been sold and extensively advertised, and served to these customers defendant's ice cream well knowing that they were imposing a fraud upon them. But these dealers are not defendants here and the defendant is not legally responsible for their acts. The defendant can no more be restrained from selling its ice cream to these dealers because they palmed it off on their customers as plaintiff's product than could a manufacturer of oleomargarine be restrained from selling his product to a retail vendor of butter who was in the habit of palming off oleomargarine as butter. The sale of a lawful product to another cannot be enjoined because that other may make an improper or fraudulent use of it. If there was proof showing a conspiracy between the defendant and the dealers to perpetrate a fraud upon the public to the prejudice of both the public and the plaintiff, we would have a different situation, but here proof of such a conspiracy is not complete. The seventh finding of fact of the chancellor is wholly unsupported by evidence. It reads as follows: "Defendant, through its servants, agents or employees has for a number of years solicited and induced plaintiff's dealers to sell ice cream manufactured by the defendant as the ice cream of the plaintiff." There being no evidence to support that finding, the decree so far as it is based upon it must fall.

Nor can the injunction be upheld so far as it restrains defendant from selling its product to plaintiff's dealers "under such conditions and circumstances which will afford the opportunity to plaintiff's dealers to substitute the defendant's product for that of the plaintiff and for selling it as such to the public." This simply means that defendant cannot sell its ice cream in places where plaintiff's ice cream is extensively advertised and defendant's is not. Such a rule if universally applied would lead to business chaos. For example, no manufacturer of lowly and obscure chewing gum could sell his product to stores where a chewing gum of national reputation was sold. Nor could a producer of little known coal sell his product to dealers who handled widely known coal. No oil company could sell its gasoline to gas stations where extensively advertised gasoline was sold.

It is true that the law will not permit any man to label his product as the product of another. For example, no man would be permitted to brand his oranges with the name of a brand which another orange grower had used and in which he had acquired a property right. The difficulty in the case of ice cream is that that the ice cream itself cannot be branded or labelled, though the packages which contains it can be. If plaintiff's ice cream could be and had been labelled and defendant had labelled its ice cream with the name of plaintiff's product, its act in so doing would be enjoinable. But here the plaintiff is asking the court to deny the defendant the right to sell its product to dealers who sell plaintiff's product. This the court below did and to this extent the decree must be set aside.

It is obvious of course that customers were deceived by the sale of defendant's product in places of business where plaintiff's superior product had long been sold, had acquired a reputation for excellence and had been and was being extensively advertised, while defendant's

product was not advertised in those places at all. But if there is remedy for this it is not that of an injunction against the company which manufactures and sells the inferior competitive product. Such an injunction loses its legal sanction when it attempts this drastic restraint upon a competitor's right of sale.

The lack of business ethics displayed by defendant in seeking out as the place of sale of its inferior product the stores where the plaintiff's superior product is advertised and sold and where the defendant carefully refrains from advertising its own product, invites and receives the condemnation of all who love fair play and scorn chicane and deceit. But unfortunately there is much that is unethical that is not enjoinable. Though there has been some progress in business ethics since Lord Chief Justice COLERIDGE wrote, a half century ago, the words about to be quoted, in Mogul Steamship Co. v. McGregor, 21 Queen's Bench Division, Law Reports 553, it is well to keep in mind in cases of this kind what the Lord Chief Justice of England said in that case, as follows: "It must be remembered that all trade is, and must be, in a sense, selfish; trade not being infinite, nay, the trade of a particular place or district being possibly very limited, what one man gains another loses. In the hand to hand war of commerce, as in the conflicts of public life, whether at the bar, in Parliament, in medicine, in engineering (I give examples only), men fight on without much thought of others, except a desire to excel or defeat them. Very lofty minds like Sir Philip Sidney, with his cup of water, will not stoop to take an advantage if they think another wants it more. Our age, in spite of high authority to the contrary, is not without its Sir Philip Sidneys; but these are counsels of perfection which it would be silly indeed to make the measure of the rough business of the world as pursued by ordinary men of business."

Courts cannot correct all unfair practices brought to their attention any more than legislators can by legislation correct all social maladjustments. Justice HOLMES has well said that "For most of the things that can properly be called evils the main remedy is for people to become more civilized": Holmes, "Law and the Court," 1913.

Until people do become more civilized and ethical in their dealings, we will,—when finding no legal curb for particularly offensive forms of selfishness in business dealings, such as presented here,—have to content ourselves with the well supported thought that in the long run such selfishness has within it the seeds of its own undoing and that abiding success in the business world as elsewhere is built on correct moral principles.

That part of the decree enjoining defendant from using plaintiff's ice cream cabinets, its cans or any other equipment furnished by plaintiff to its dealers, is sustained.

In Elliott Co. v. Skillkrafters, Inc., 271 Pa. 185, this court held that "the good will of a manufacturer is not to be destroyed through needless simulation by others, if the exercise of a reasonable precaution to protect it will impose no substantial restriction on the right of another to make and sell." Placing the ice cream in plaintiff's cans and containers is both a trespass on plaintiff's property and a needless and lawless simulation of plaintiff's product. It was properly enjoined.

"Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another,

and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise. Thus the cases are in accord in holding that it constitutes unfair competition to use a rival's bottle, tank, or package for the sale of a competing product, where the purpose and effect of such use are to enable the producer or retailer to pass off the user's product as the product of the manufacturer originally using the tank, bottle, or container": 26 Ruling Case Law, section 53, page 875. The use by the defendant of plaintiff's cans, containers or other equipment comes within that class of unfair competitive acts which courts of equity will vigorously enjoin.

The decree of the court below is reversed as to paragraphs one and two; it is affirmed as to paragraphs three and four, appellant must pay the costs.