JOHNSON GAS APPLIANCE COMPANY, Appellant, v. RELIABLE GAS PRODUCTS COMPANY et al., Appellees.

No. 46184.

JUNE 15, 1943.

Don Barnes, Donald P. Barnes, and E. H. Wadsworth, all of Cedar Rapids, for appellant.

R. G. Popham, of Iowa City, and Crissman & Bleakley, of Cedar Rapids, for appellees.

MULRONEY, J.—The Johnson Gas Appliance Company, of Cedar Rapids, Iowa, alleged in its petition that for twenty-five years it had manufactured a bench soldering furnace and spent large sums of money in developing, manufacturing, advertising, and selling said product and "that the size, shape, curved hood, color, appearance and design of the legs, have become distinguishing features associated in the minds of the public with the Plaintiff as its maker." The petition then alleged that the defendant partnership was composed of Revel M. Sayers and Mabel L. Sayers, husband and wife, and that Mabel L. Sayers was formerly office manager and secretary of the manager of the plaintiff company; that upon severing her connection with the plaintiff company about three years before suit, the defendant partnership "designed, manufactured, and sold throughout the United States, and especially within and throughout the State of Iowa, a Bench Furnace substantially identical in size, shape, color and general appearance with the same type of curved hood and the same type of legs as is manufactured and sold by the Plaintiff."

Plaintiff further alleged that Mrs. Sayers took the names and addresses of plaintiff's customers with her when she left plaintiff's employ, and the petition prayed for an injunction restraining the defendants from continuing the manufacture, distribution, and sale of products similar in size, appearance, or design, with hood shaped to resemble that used by plaintiff or with legs resembling those used by plaintiff in the manufacture and sale of its bench furnace, and further that plaintiff be awarded $5,000 damages.

The answer of the defendant partnership was a general denial. The trial court held plaintiff failed to introduce sufficient evidence to establish its cause of action and dismissed the petition. .

It is enough to state that the evidence did not establish the allegation that plaintiff's customer lists were pirated by defendants, and counsel for plaintiff in their written brief and argument simply contend that the facts show that defendants imitated plaintiff's product to such an extent as to deceive the buying public generally, and the similarity of appearance

was such that it either did, or was likely to, deceive the ordinary and casual buyer. Without conceding the correctness of the rule of law contained in counsel's contention, we will confine our discussion of the evidence to that part of the testimony showing the similarity in appearance of the two bench-soldering furnaces.

A bench-soldering furnace is a gas furnace, weighing fifteen to twenty-five pounds, used to heat soldering irons. Both furnaces have similar legs and both have similar curved hoods over the flame used to turn the flame back over the soldering irons. The selling agent for plaintiff testified that "from an outward look it would take a person that was closely acquainted with the furnaces manufactured by the plaintiff and the defendant to tell them apart." But this same witness testified that the name of Johnson Gas. Appliance Company appears on the hood of plaintiff's furnace and the name of Reliable Gas Products Company, Cedar Rapids, Iowa, appears on the bench of defendants' furnace; that the name of Johnson Natural Gas was stamped on the burner and valve of plaintiff's furnace and the name of Reliable Gas Products Company, Cedar Rapids, Iowa, was stamped on the burner tube of defendants' furnace; that the handle on plaintiff's furnace is small and round and the handle on defendants' furnace is flat and heavy; that there is some difference in the way the pilot-light tubing is attached to the manifold in the two furnaces. It also appeared in the testimony that plaintiff's furnace is black, while the defendants' furnace is painted an aluminum color and had been so painted for more than a year and a half before the suit was brought.

Such evidence is not a sufficient showing of similarity of appearance. Indeed, it would seem that the difference in color would alone be a sufficient distinguishing characteristic. In the case of Champion Spark Plug Co. v. A. R. Mosler & Co., D. C., N. Y., 233 F. 112, 116, the relief granted by the court in an unfair-competition case was a court order that the color of defendant's spark plug be changed. The court was of the opinion that after the color change "not even a careless buyer would be misled."

But the evidence shows, and we are told in argument, that these furnaces are not usually sold from stock by salesmen, and

the prospective customer sees nothing but the black-and-white cut or picture of the furnace he buys; that in many instances the customer buys from a black-and-white picture printed or pasted in a catalog of a distributor. Of course, in such pictures the distinction in color is not apparent, and it is true there is a strong resemblance between the pictures and advertising cuts of the two furnaces. A mail-order purchase made in response to the manufacturer's own advertisement would certainly negative any idea of deception. No purchaser would think he was buying plaintiff's furnace if he purchased by mail from the defendant. There is no similarity in name sufficient to invoke the doctrine of Lytle v. Smith, 204 Iowa 619, 215 N. W. 668, or Atlas Assurance Co. v. Atlas Insurance Co., 138 Iowa 228, 112 N. W. 232, 114 N. W. 609, 15 L. R. A., N. S., 625, 128 Am. St. Rep. 189.

There was no evidence concerning the manner in which a dealer would display the cut or pictures of the furnace in his catalog. One witness testified that he purchased defendants' furnace from a hardware dealer after selecting it from the hardware dealer's catalog. This catalog displayed thousands of articles sold by the hardware dealer, but this witness did not testify that he was deceived when the Reliable Furnace arrived in response to his order. In fact, he said he "never paid much attention to the appearance. They all look like one another to me."

Even if the cut in the dealer's catalog were not accompanied by the manufacturer's name, it would afford no basis for the injunctive relief. The manufacturer who sells to retailers has done all that his competitor can demand when he distinguishes his goods from those of another manufacturer. The competitor cannot found an injunctive right against such manufacturer upon the sole ground that retailers may, or do, palm off his goods as those of the competing manufacturer. See Philadelphia Dairy Prod. Co. v. Quaker City Ice Cream Co., 306 Pa. 164, 159 A. 3, 84 A. L. R. 466.

It is apparent that the curved hood is functional and used to turn the flame back over the soldering iron to utilize what would otherwise be waste heat. At one time plaintiff owned a patent on this hood which had expired. Plaintiff may not

monopolize the functional parts of an unpatented article. Lennox Furnace Co. v. Wrot Iron Heater Co., 181 Iowa 1331, 160 N. W. 356, 165 N. W. 395. The evidence showed that at least one other bench-furnace manufacturer used a similar curved hood.

There is no evidence that defendants or their representatives made any claim or representation that its furnaces were the furnaces of the plaintiff company, nor any evidence that defendants ever represented that they were the agents of the plaintiff company. There was evidence that, because the two companies were located in Cedar Rapids and the catalog cuts and advertising cuts were similar, purchasers of bench furnaces thought there might be some association between the companies. There is evidence that inquiries were made by such purchasers who thought the defendants might be a selling organization created by the plaintiff company. The fact that both furnace manufacturers are located in the same city is not sufficient to warrant recovery. Plaintiff, by engaging in the bench-furnace-manufacturing business in Cedar Rapids, gained no pre-emptive right in that city sufficient to warrant the exclusion of other bench-furnace manufacturers because some confusion might result.

We have examined the record in the light of the rule contended for by plaintiff that mere similarity of appearance is sufficient if it is likely to deceive the ordinary and casual buyer. The rule finds support in some of the cases cited by plaintiff. Rushmore v. Manhattan Screw & Stamping Works, 2 Cir., N. Y., 163 F. 939, 19 L. R. A., N. S., 269; H. E. Winterton Gum Co. v. Autosales Gum & Chocolate Co., 6 Cir., Tenn., 211 F. 612; and Enterprise Mfg. Co. v. Landers, Frary & Clark, 2 Cir., Conn., 131 F. 240. The rule is probably best illustrated by the following quotation from the syllabus in the Rushmore case [163 F. 940]:

"One who manufactures and sells a well-known article of commerce, like an automobile search light, inclosed in a shell of graceful but unpatented design, may maintain a bill for an injunction, profits, and damages against a defendant who sells an automobile search light inclosed in a similar shell, although his

name appears prominently thereon as maker, and he has never represented that his lamps were made by complainant, if it is shown that the similarity of the shells does, or is likely to, deceive purchasers.''

But the writer of the majority opinion in the Rushmore case almost apologized for the conclusion when he stated [163 F. 942]:

''We are of the opinion, however, that to answer this question in favor of the complainant carries the doctrine of unfair competition to its utmost limit. If it be pushed much farther those engaged in trade will be encouraged to run to the courts with trivial complaints over the petty details of business and thus will grow up a judicial paternalism which in time may, become intolerable.''

Moreover, the decision is much weakened by a dissenting opinion where the writer states [163 F. 942]:

''The complainant has no design patent, and his case must stand, if at all, as a case of unfair trading, in which the essential element is deception—the palming off of one's goods as those of another. But how a purchaser could be deceived into buying an automobile lamp plainly marked with the name and trade-mark of the defendant in the belief that it was the complainant's lamp is more than I can comprehend. The mere similarity in the shape of the lamps in my opinion is not sufficient to produce such a result.''

There are many cases involving unfair competition decided by the state and federal courts. Many of them are collected in the annotation in 84 A. L. R. 472 to 490. We do not deem it necessary to discuss the decisions of other jurisdictions, except to point out that the writer of the A. L. R. annotation, above cited, states the general rule, at page 484, that:

''The essence of unfair competition consists in palming off, either directly or indirectly, one person's goods as the goods of another, and while this involves an intent to deceive, it is not necessary to prove intent by direct evidence, where it is clearly to be inferred from circumstances.''

The previous decisions of this court follow the above general rule. We said in the case of Motor Accessories Mfg. Co. v. Marshalltown Motor Material Mfg. Co., 167 Iowa 202, 207, 149 N. W. 184, 186, that unfair competition:

" * * * consists in the conduct of a trade or business in such a manner that there is an expressed or implied representation that the goods or business of the one man are the goods and business of another * * * The ground of the action of unfair competition is fraud, and this may be shown by direct testimony, or by facts and circumstances or inferred from the manner in which the business is carried on."

The above rule was again approved in Lennox Furnace Co. v. Wrot Iron Heater Co., 181 Iowa 1331, 160 N. W. 356, 165 N. W. 395, where the defendant who imitated plaintiff's Torrid Zone Furnace was held guilty of unfair competition. But in the Lennox case it was conceded that the "mere fact of imitation" did not make out a case. It was the duplication, plus the marketing plan designed and executed to deceive ordinarily prudent persons into believing defendant's furnaces were plaintiff's, that warranted the court in holding the plaintiff was the victim of unfair competition.

Counsel for plaintiff seem to sense the fact that the evidence would not warrant the injunction under the rules of unfair competition expressed in the previous decisions of this court, for we are asked to extend our rule and adopt the rule of the Rushmore case and other federal cases. The record in this case presents no compelling argument for such extension. We are unwilling to bring into the range of court injunction the business practice where intent to deceive is not shown by direct or indirect proof, nor do we feel we should substitute for the ordinary prudent buyer the test of what would likely deceive the casual purchaser.

Here there was no direct evidence to prove intentional deception, and the circumstances of resemblance and marketing plan are insufficient to establish an intent to deceive upon the part of the defendants. The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.