TESTING SYSTEMS, INC.
v.
MAGNAFLUX CORPORATION.
Civ. A. No. 38701.

United States District Court
E. D. Pennsylvania.
March 2, 1966.

Maxwell P. Gorson, Philadelphia, Pa., for plaintiff.

David F. Maxwell, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., District Judge.

This is an action for trade libel or disparagement of property. Jurisdiction is predicated on diversity of citizenship and the requisite amount in controversy. The matter is now before this Court on the defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

Essentially the facts are these. Both plaintiff, Testing Systems, Inc., and the defendant, Magnaflux Corp., are engaged in the manufacture and sale of equipment, devices and systems, including chemical products, for use in the nondestructive testing of commercial and industrial materials. The allegedly actionable statements concern similar chemical products of the parties; that of the plaintiff being known as "Flaw Finder", and that of the defendant identified as "Spotcheck". The complaint contains allegations that both written and oral statements disparaging plaintiff's prod-

uct were circulated by the defendant's agents to plaintiff's current and prospective customers. Specifically, in the former category, it is alleged that the defendant did on or about May 6, 1965, through its agents, publish an allegedly false report to the effect that the United States Government had tested plaintiff's product, and found it to be only about 40% as effective as that of the defendant.

It appears further from the complaint that on or about May 23, 1965, while in attendance at a manufacturer's convention in Philadelphia, defendant's agent, in the presence of plaintiff's current and prospective customers, "did in a loud voice state that * * * [plaintiff's] * * * stuff is no good," and that "the government is throwing them out."

For the purposes of this motion, defendant admits the truth of the allegations, but asserts that the action must nevertheless be dismissed because (1) the defendant did no more than make an unfavorable comparison of plaintiff's product with its own; and (2) even assuming that the statements were actionable, plaintiff has failed to allege his damages with the required specificity.

## UNFAVORABLE COMPARISON

■ It would serve no useful purpose to dwell at length on the issue of unfavorable comparison. Suffice it to say, as the defendant properly points out, that a statement which takes the form of an unfavorable comparison of products, or which "puffs" or exaggerates the quality of one's own product is not ordinarily actionable. See e. g. 2 Callman, Unfair Competition and Trademarks, § 39 et seq. (2 ed. 1950); 1 Nims, Unfair Competition and Trademarks, § 255 et seq. (4 ed. 1947); Smith, Disparagement of Property, 13 Colum.L.Rev. 121 (1913). This has long been the rule in England, where the action originated, and is now well established in the vast majority of United States jurisdictions. Cf. Annot. 57 A.L.R.2d 839 (1958); Prosser, Torts § 108 (2 ed. 1955); Restatement, Torts, § 649, Comment (a).

However, this Court is not convinced by the defendant's arguments that his comments amounted to mere unfavorable comparison. The modern history of the doctrine of unfavorable comparison and its permissible use in the conduct of business traces its origin to the leading English case of White v. Mellin, [1895] A.C. 154. There the defendant had advertised his product as being far more healthful than plaintiff's. In refusing relief the Court established the precedent that irrespective of their truth or falsity, statements by one competitior which compare his product with that of another are not actionable.

■■ It does not follow from this, however, that every trade disparagement is protectible under the guise of unfavorable comparison merely because the perpetrator was canny enough to mention not only the product of his competitor but also his own. The decision in White v. Mellin, supra, was founded on the near impossibility of ascertaining the truth or falsity of general allegations respecting the superiority of one product over another. To decide otherwise, explained Lord Herschell, would turn the courts "into a machinery for advertising rival productions by obtaining a judicial determination [as to] which of the two was better." 2 Callman, Unfair Competition and Trademarks, § 41.2 (2 ed. 1950). One is expected to believe in the superiority of his wares, and he may properly declare his belief to interested parties. It has even been said that he may "boast untruthfully of his wares." (Phila. D. Prod. v. Quaker City I. Co., 306 Pa. 164, 172, 159 A. 3, 84 A.L.R. 466 (1932); but see the Lanham Trademark Act, 60 Stat. 441 (1946), 15 U.S.C.A. § 1125(a) (1958) which gives a civil action to anyone injured or damaged by false advertising of goods involved in interstate commerce.)

■ The fine line that separates healthy competitive effort from underhanded business tactics is frequently difficult to determine. Apart from the tradesman's right of free speech, which must be vigorously safeguarded, the

public has a genuine interest in learning the relative merits of particular products, however that may come about. To advance these interests the law of the market place gives the competitor a wide berth in the conduct of his business. As Mr. Justice Maxey of the Pennsylvania Supreme Court said in 1932,

> "[H]e may send out circulars, or give information verbally, to customers of other men, knowing they are bound by contract for a definite term, although acting upon the expectation and with the purpose of getting the trade of such persons for himself.

> "[H]e may use any mode of persuasion with such a customer * * * which appeals to his self-interest, reason, or even his prejudices.

> "[H]e may descant upon the extent of his rival's facilities compared with his own, his rival's means, his insolvency, if it be a fact, and the benefits which will result to the customer in the future from coming to the solicitor rather than remaining where he is. * * * 'the law of competition' * * * takes little note of the ordinary rules of good neighborhood or abstract morality." (Phila. D. Prod. v. Quaker City I. Co., supra, at 172, 159 A. at 5, quoting from Citizen's Light, Heat & Power Co. v. Montgomery Light & Water Power Co., 171 F. 553 (5 Cir. 1909).)

Nonetheless, there is an outer perimeter to permissible conduct. The tradesman must be assured that his competitors will not be suffered to engage in conduct which falls below the minimum standard of fair dealing. "[I]t is no answer that they can defend themselves by also resorting to disparagement. A self-respecting business man will not voluntarily adopt, and should not be driven to adopt, a selling method which he regards as undignified, unfair, and repulsive. A competitor should not, by pursuing an unethical practice force his rival to choose between its adoption and the loss of his trade." (Wolfe, Unfair Competition, 47 Yale L.J. 1304, 1334–35 (1938).)

The defendant's comments in the case presently before this Court do not entitle him to the protection accorded to "unfavorable comparison." There is a readily observable difference between saying that one's product is, in general, better than another's (though even this is subject to serious objection, see Callman, supra, § 41.2) and asserting, as here, that such other's is only 40% as effective as one's own. The former, arguably, merely expresses an opinion, the truth or falsity of which is difficult or impossible of ascertainment. The latter, however, is an assertion of fact, not subject to the same frailties of proof, implying that the party making the statement is fortified with the substantive facts necessary to make it. This distinction has never been seriously questioned. See e. g. Restatement, Torts, §§ 626, 627, 628. The defendant in this case admittedly circulated to plaintiff's present and prospective customers false statements to the effect that the government had tested both products and found the defendant's to be 60% more effective than plaintiff's. This is not the sort of "comparison" that courts will protect.

Apart from this, there is at least one additional factor which withdraws the defendant's comments from the category of unfavorable comparison. Not content with making the admittedly false statements and allowing them to be evaluated independently of any extraneous influence, the defendant here gave added authenticity to its assertions by invoking the reputation of a third party, the United States Government. It is unnecessary to speculate on the additional force the defendant's remarks must have had when coupled with the purported approval of so highly credible a source. This, of course, is to say nothing of the statements to the effect that the plaintiff had been "thrown out," which by no stretch of the imagination could be termed mere comparison.

For all of the above reasons, it is the judgment of this Court that the defendant's remarks are actionable.

## DAMAGES

■ However, there remains for consideration the equally important matter of damages. In his complaint, plaintiff states merely that as a result of the defendant's disparagement, he has suffered a loss of customers, current and prospective. No attempt is made to specify which customers, nor is there any effort to even approximate their value to him. He asserts merely that the amount of his loss exceeds the minimum jurisdictional requirements of this Court.

■ After careful examination of the authorities on the question, it is apparent that plaintiff has failed to set forth his damages with the required particularity. The necessity of pleading and proving special damages has been an integral part of the action of disparagement of property since it first developed as an extension of slander of title. See Note, 77 Harv.L. Rev. 888, 890 (1964); Comment, 65 Dick.L.Rev. 145 (1961). It arose as a result of the friction between the ecclesiastical and common law courts of England when the common law courts sought to assume jurisdiction over actions for defamation. "Since slander of any kind was a sin, church courts alone could punish unless temporal damage could be shown to have resulted from the defamatory words." See Note, 41 Ill.L. Rev. 660, 662 (1947).

Until the 19th Century the requirement did not impose any untoward burden on the litigant. The early business community was devoid of the complexities that characterize the modern market place, and it was the rule, rather than the exception, that tradesmen knew their customers well. It was not too difficult, therefore, to determine just when and why one's customers began to favor a competitor.

As is so often the case, however, the rule respecting special damages continued in force long after its *raison d'être* had passed. Today, in the vast majority of States, including Pennsylvania, a plaintiff in a disparagement of property action must both plead and prove special

damages. See Comment, 7 Vill.L.Rev. 271 (1962); 1 Harper & James, Torts § 474 (1956); Annot., 150 A.L.R. 716 (1944): Smith, Disparagement of Property, supra. The inflexibility of most courts in demanding strict compliance with the rule has hampered the effectiveness of the action and contributed to its unpopularity. One can appreciate the plight of the small metropolitan retailer whose patrons are, for the most part, unknown to him by name. Here, however, we are not dealing with small retailers. Both the defendant and the plaintiff in this action are business organizations of some substance who are well aware of their present and potential sources of business. The rule requiring some showing of damage, while perhaps harsh in some cases, is entirely reasonable under the circumstances as presented here.

■ But even if this were not so, this Court is not at liberty to disregard the law of the State and to substitute therefor its own conception of what the law ought to be. The Pennsylvania cases in this area, although few in number, leave little doubt as to how the State courts would receive plaintiff's claim. See e. g. Kiefer v. Lutz, 32 Pa.Dist. & Co.R.2d 85 (1963); Cosgrove Studio & Camera Shop v. Pane, 21 Pa.Dist. & Co.R. 2d 89 (1960), rev'd 408 Pa. 314, 182 A.2d 751 (1962); Shaines v. R. G. Dun Co., 8 Pa.Dist. & Co.R. 597 (1927); Young v. Geiske, 209 Pa. 515, 58 A. 887 (1904). "[H]e," the plaintiff, "must in his complaint set out the names of his lost customers and show by figures how much he has lost financially." *Cosgrove*, supra, 21 Pa.Dist. & Co.R.2d at 91.

As recently as 1962 the Pennsylvania Supreme Court had occasion to reconsider its position, although indirectly. In *Cosgrove*, supra, the objectionable comments imputed a lack of integrity to the plaintiff. The lower court dismissed the action because the plaintiff had failed to set forth his damages specially. On appeal the decision of the lower court was reversed, with the court concluding that the comments were libelous *per se* in

which case damages need not be specially pleaded or proved, since they are implied. The absence of any reference in the court's opinion to pleading requirements when the statements are not libelous *per se,* coupled with Pennsylvania lower court decisions on the matter, leave this Court no alternative but to conclude that the requirement still exists in Pennsylvania.

Thus to avoid the necessity of specially pleading his damages, the plaintiff must show that the defendant's statements constituted libel *per se.* Although some argument to this effect appears in plaintiff's brief, it clearly falls short of the mark. It is possible in most disparagement cases to infer some criticism of the tradesman personally. However, where the comments fail to directly or by reasonable inference impugn the personal character or business conduct of the plaintiff, courts will not extend the range of judicial inventiveness to find libel *per se* where obviously none exists. Cf. National Refining Co. v. Benzo Gas Motor Fuel Co., 20 F.2d 763, 771, 55 A.L.R. 406 (8th Cir. 1927); Prosser, Torts § 108 (2 ed. 1955). Here the defendant falsely reported that the United States Government had found plaintiff's *product to be so ineffective in comparison* with defendant's that it chose to discontinue dealing with plaintiff. However unethical this may be from a business standpoint, it does not amount to libel *per se.* It does not accuse the plaintiff of fraud or otherwise attack his character personally, nor does it by reasonable inference draw into question the solvency of his business. Under these circumstances libel *per se* did not materialize, and this argument must be dismissed accordingly.

Finally, even if the more liberal federal rules of pleading are applied [Fed.R.Civ.P. 9(g)], plaintiff's allegation of damages still fails to satisfy our requirements. Although, in general, all that is required is that the defendant be put on notice as to the general nature of the claim, the facts and information must be sufficient to form the basis of reasonably fruitful discovery proceedings. The defendant has called to the attention of this Court a case that appears to be peculiarly applicable here. In Fowler v. Curtis Publishing Co., 86 U.S.App.D.C. 349, 182 F.2d 377 (1950), the plaintiffs sought damages for personal defamation and trade libel. The following quotation appears in the opinion of the Circuit Court which affirmed the District Court's dismissal of the action.

" '[I]t was * * * necessary for the plaintiff to allege either the loss of particular customers by name, or a general diminution in its business, and extrinsic facts showing that such special damages were the natural and direct result of the false publication. If the plaintiff desired to predicate its right to recover damages upon general loss of custom, it should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, facts showing that such loss in sales were the natural and probable result of such publication, and facts showing the plaintiff could not allege the names of particular customers who withdrew or withheld their custom.' " Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, 17 F.2d 255, 261, 52 A.L.R. 1187 (8th Cir. 1926).

The complaint in this action was filed almost immediately after the disparagement occurred. Nine months have expired since the cause of action arose. It may now be possible for plaintiff to plead over with the requisite degree of specificity. For this reason, the complaint will not be dismissed unless the plaintiff fails to so plead within the period specified below.

## ORDER

And now, to wit, this 2nd day of March, A. D. 1966, it is ordered that the complaint in this action be dismissed unless the plaintiff, within thirty (30) days hereof, amends his complaint to properly reflect his special damages.