## TRIANGLE FILM CORPORATION v. ARTCRAFT PICTURES CORPORATION.

(Circuit Court of Appeals, Second Circuit. March 4, 1918.)

No. 180.

1. MASTER AND SERVANT ⬤�africa63—CONTRACT OF EMPLOYMENT—BREACH.

A contract to enter plaintiff's employment, which recited that it was "made upon the condition and with the understanding that the employé" would be supervised by and work under a person named, who was then manager of a department of plaintiff's business, was not binding upon the employé after such manager had lawfully severed his relations with plaintiff.

2. INJUNCTION ⬤➤63—GROUNDS—INDUCING BREACH OF CONTRACT.

It is not actionable, nor ground for an injunction, for an employer, in the legitimate interest of its business and by fair means, to induce an employé of another to leave his present employment and enter its own, where he is free to leave, and in so doing violates no contract.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Triangle Film Corporation against the Artcraft Pictures Corporation. From an order denying a preliminary injunction, complainant appeals. Affirmed.

Appeal from an order denying the plaintiff's motion for an injunction pendente lite. The jurisdiction of the court depended upon diverse citizenship. The plaintiff is a Virginia corporation engaged in manufacturing, distributing, and exhibiting moving pictures, and on the 26th day of March, 1917, entered into a contract with one William S. Hart, of Los Angeles, Cal. By this contract the plaintiff engaged Hart as an actor, to perform in motion picture productions, "which are to be manufactured by the employer under the supervision of Thomas H. Ince." Hart accepted the employment "under the supervision of the said Thomas H. Ince." The contract recited that it was intended to be superseded by one in more elaborate form, and both parties acknowledged that Hart could not be replaced. It concluded as follows: "This contract is made upon the condition and with the understanding that the employé will be supervised in his acting and work hereunder by Thomas H. Ince." On the day mentioned Ince was in the employ of the plaintiff as manufacturing producer at its studio in Culver City, Cal., and held an interest in its stock, but on June 12, 1917, he sold out all this interest and severed his relations with it. Hart, upon learning these facts, terminated his relations with the plaintiff, and both Hart and Ince went into the employ of the defendant. It may be assumed that the defendant offered to take Hart in, and, indeed, that it persuaded him to accept. It may also be assumed that the defendant knew of the contract between the plaintiff and Hart. Ince, however, violated no contract between himself and the plaintiff in selling out his stock interests in it, or terminating his relations, nor is there undisputed evidence that, having done so, he attempted to dissuade Hart from continuing in the plaintiff's employ.

Alfred S. Barnard and Walter N. Seligsberg, both of New York City, for appellant.

Elek John Ludvigh, of New York City (Harold M. Pitman, of New York City, of counsel), for appellee.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

⬤➤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEARNED HAND, District Judge (after stating the facts as above). **[1]** This case depends either on Lumley v. Gye, 2 El. & Bl. 216, or upon a strangely misconceived extension of that doctrine Lumley v. Gye, supra, a wholesome and widely accepted case we not only accept on principle, but we should in any case be bound to treat it as law upon authority. Bitterman v. L. & N. R. R. Co., 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed. 171; 12 Ann. Cas. 693; Angle v. Chic., etc., R. R., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55. And in that aspect the case stands upon the question whether Hart violated his contract. He so clearly did not that we hardly feel justified in any discussion of the question. He had in substance stipulated that his term should not last beyond Ince's connection with the plaintiff, and no one suggests that Ince had no right to sell out his interest and leave. Assuming, then, that the defendant did induce him to leave, it did not run counter to the doctrine of Lumley v. Gye, supra.

**[2]** Realizing the danger of such a conclusion, the plaintiff then stands upon another leg, which is this: The reasonable expectation of an employer that his employés will continue with him is a part of his "good will," as we say, and any one who hurts him in that "good will" does him an "injuria," even though there be no contract broken and the employé might leave at pleasure. Lord Bowen put the doctrine as well as anybody in Mogul S. S. Co. v. McGregor, L. R. 23 Q. B. 598, 613, that intentional damage to one's property or trade without "just cause" is actionable. Moreover, the Supreme Court in Truax v. Raich, 239 U. S. 33, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283, and Hitchman Coal Co. v. Mitchell (December 10, 1917) 245 U. S. 229, 38 Sup. Ct. 65, 62 L. Ed. ——, has said that in such cases there may be a right of action, though the person persuaded does not break a contract in leaving.

Yet it is clear that the real question turns upon what is "just cause" ("Privilege, Intent and Malice," Oliver Wendell Holmes, Jr., 8 Harv. Law R. 1), and that in effect it makes slight difference whether one asks in respect of what "cause of action" the plaintiff suffered his damage, or whether the defendant had "just cause" for inflicting the damage, though it does make a good deal of difference in the development of the law. Nobody has ever thought, so far as we can find, that in the absence of some monopolistic purpose every one has not the right to offer better terms to another's employé, so long as the latter is free to leave. The result of the contrary would be intolerable, both to such employers as could use the employé more effectively and to such employés as might receive added pay. It would put an end to any kind of competition.

That such a doctrine should be supposed to follow from Truax v. Raich, supra, or Hitchman Coal Co. v. Mitchell, supra, somewhat surprises us. In the first case the defendant had threatened to use illegal means to induce the employer to discharge the plaintiff. In the second, a labor union had determined to compel a mine to operate as a closed shop, and that, too, by fraud. It was held that, since the union was not seeking to redress wrongs of which any of the plaintiff's em-

ployés complained, but intervened only for the purpose of preventing any open shops which might compete with closed shops elsewhere, they had no "just cause" for the ensuing damage. That purpose—i. e., to compel the whole industry to operate closed shops—was held to be illegal, and the illegality depended upon the supposedly meddlesome character of the intervention. That nobody in his own business may offer better terms to an employé, himself free to leave, is so extraordinary a doctrine, that we do not feel called upon to consider it at large.

The order is affirmed.