PEOPLES SECURITY LIFE INSURANCE COMPANY v. MILTON S. HOOKS

No. 437PA87

(Filed 5 May 1988)

1. Contracts § 35— interference with contract—business competition as justification

Competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interest and by means that are lawful.

2. Contracts § 33— hiring of competitor's employees—justifiable interference with employment contracts

Plaintiff insurance company's allegations that defendant left his position with plaintiff to accept employment with a competing company, that his new job involved developing the territory of eastern North Carolina and South Carolina, and that defendant offered plaintiff's employees job opportunities which induced them to terminate their terminable at will contracts and, by locating these employees in their previously assigned territories, induced them to breach the non-competition clauses in their contracts with plaintiff *are held*

insufficient to state a claim for tortious interference with contract because the hiring and placing of plaintiff's former employees by defendant for the purposes of developing the territory assigned to him by a company competing with plaintiff amounted to justifiable interference.

**3. Contracts § 7.1; Master and Servant § 11.1— hiring of plaintiff's employees— no breach of covenant not to compete**

The mere fact that plaintiff may have been inconvenienced because defendant hired its employees does not give rise to a legally recognizable claim against defendant for breaching the covenant contained in his own terminable at will employment contract with plaintiff not to solicit or service plaintiff's policyholders or interfere with its existing policies for one year after termination.

Justice MEYER dissenting.

ON discretionary review of a decision of the Court of Appeals, 86 N.C. App. 354, 357 S.E. 2d 411 (1987), which affirmed a judgment entered by *Long, J.*, at the 27 October 1986 Civil Session of Superior Court, NASH County. Heard in the Supreme Court on 11 February 1988.

*Mount, White, Hutson & Carden, P.A., by James H. Hughes, for the plaintiff-appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by James T. Williams, Jr. and Jim W. Phillips, Jr., for the defendant-appellee.*

MITCHELL, Justice.

The plaintiff contends that the Court of Appeals erred in affirming the trial court's entry of judgment, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, dismissing the plaintiff's claims. We conclude that the Court of Appeals was correct in affirming the dismissal.

The plaintiff, Peoples Security Life Insurance Company [hereinafter Peoples Life], brought this action alleging in its complaint that it is in the business of selling life, health and accident insurance policies. The defendant, Hooks, was employed by the plaintiff until 27 November 1985 as a district manager with supervisory responsibilities in the towns of Rocky Mount, Wilson and Farmville and their immediate vicinities. Hooks supervised, on behalf of Peoples Life, approximately forty-five insurance agents

whose duties included selling and servicing insurance policies and collecting premiums.

On 27 November 1985, Hooks resigned from Peoples Life to accept employment with Monumental Life Insurance Company, a competitor of Peoples Life. At Monumental, Hooks was assigned the job of developing the territory of eastern North and South Carolina. To assist him in developing his assigned territory, Hooks hired fifteen insurance agents and four sales managers who until then were employed by Peoples Life.

In its complaint, the plaintiff alleged as its first claim for relief that the defendant maliciously interfered with employment contracts existing between Peoples Life and certain former agents. The plaintiff alleged as its second claim that the defendant, by hiring the plaintiff's employees, breached a covenant not to compete contained in his own employment contract with Peoples Life. The plaintiff alleged actual damages in excess of $785,000 and sought punitive damages of not less than $1,000,000.

The defendant denied the material allegations in plaintiff's complaint and counterclaimed for monies allegedly due him.

A motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(6) tests the legal sufficiency of the complaint. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970). In ruling on the motion, the allegations of the complaint are viewed as admitted, and on that basis the court must determine as a matter of law whether the allegations state a claim for which relief may be granted. *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976). In reviewing a dismissal of a complaint for failure to state a claim, the appellate court must determine whether the complaint alleges the substantive elements of a legally recognized claim and whether it gives sufficient notice of the events which produced the claim to enable the adverse party to prepare for trial. *See Sutton v. Duke*, 277 N.C. at 104, 176 S.E. 2d at 167; *see also Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979). A claim should be dismissed under Rule 12(b)(6) where it appears that the plaintiff is entitled to no relief under any statement of facts which could be proven. *See Newton v. Standard Fire Ins. Co.*, 291 N.C. at 111, 229 S.E. 2d at 300; *Sutton v. Duke*, 277 N.C. at 102, 176 S.E. 2d at 166.

## FIRST CLAIM

The plaintiff, Peoples Life, brought this action alleging in its first claim for relief that the defendant tortiously interfered with terminable at will contracts between the plaintiff and certain of its former employees. Pertinent allegations include the following:

7. That most of the contracts which plaintiff had with its insurance agents provided that in the event that agents left the employment of the company they agreed for a period of one year "not to work upon or in any way interfere with any part of any account or territory upon which the Agent previously worked in the same State for the Company."

8. That the defendant, Milton S. Hooks, had personal knowledge of the contractual relationship with the agents in the Rocky Mount-Wilson-Farmville area with the plaintiff, and of the terms and conditions thereof.

. . . .

11. That before resigning from the employment of the plaintiff, the defendant, Milton S. Hooks, sought out and took employment with another insurance company, which he knew to have a history of pirating the plaintiff's insurance agents. His employment was to develop the territory of eastern North and South Carolina for his new employer.

12. That the plaintiff is informed and believes that before terminating his employment with the plaintiff, the defendant, Milton S. Hooks, understood and actively engaged in inducing the plaintiff's agents to terminate their contracts of employment with the plaintiff.

13. That immediately after his resignation the defendant, Milton S. Hooks, with full knowledge of his contractual relationship with the plaintiff, employed 15 of the plaintiff's insurance agents and 4 of its sales managers, intentionally inducing them to terminate their contracts of employment with the plaintiff.

14. That upon information and belief, the defendant, Milton S. Hooks, employed said insurance agents to sell insurance in the same territory in which they had sold insurance for plaintiff, in direct violation of their contractual obligation to the

plaintiff "not to work upon or in any way interfere with any part of any account or territory upon which the Agent previously worked in the same State for the Company."

. . . .

19. That the actions, as outlined above, by the defendant, were without justification and were done wilfully, in reckless and wanton disregard of the plaintiff's rights.

In *Childress v. Abeles*, Justice Parker, later Chief Justice, explained the claim for tortious interference with a contract and defined its elements as follows:

> The overwhelming weight of authority in this nation is that an action in tort lies against an outsider who knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party.

> [The] essential elements of the wrong [are as follows]: *First*, that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. *Second*, that the outsider had knowledge of the plaintiff's contract with the third person. *Third*, that the outsider intentionally induced the third person not to perform his contract with the plaintiff. *Fourth*, that in so doing the outsider acted without justification. *Fifth*, that the outsider's act caused the plaintiff actual damages. (Citations omitted.)

240 N.C. 667, 676, 84 S.E. 2d 176, 181 (1954).

[1] A motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged. *See, e.g., Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282 (1976); *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176 (1954). In *Smith* we held that "[t]he privilege [to interfere] is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and *bona fide* attempt to protect the interest of the defendant which is involved." *Smith v. Ford Motor Co.*, 289 N.C. at 91, 221 S.E. 2d at 294 (quoting Carpenter, *Interference With Contract Relations*, 41 Harv. L. Rev. 728, 746 (1928) ). In determining whether an actor's conduct is justified, consideration

is given to the following: the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor and the contractual interests of the other party. 4 Restatement (Second) Torts § 767 (1979); *see also Smith v. Ford Motor Co.*, 289 N.C. at 94, 221 S.E. 2d at 296. If the defendant's only motive is a malicious wish to injure the plaintiff, his actions are not justified. 86 C.J.S. *Torts* § 44 (1954). If, however, the defendant is acting for a legitimate business purpose, his actions are privileged. Numerous authorities have recognized that competition in business constitutes justifiable interference in another's business relations and is not actionable so long as it is carried on in furtherance of one's own interests and by means that are lawful. *See Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176; 45 Am. Jur. 2d *Interference* §§ 29-32 (1950); *see generally* Annot. "Interference with Business Relation," 9 A.L.R. 2d 262-63 (1969). With these familiar principles in mind, we review the plaintiff's claim for interference with its employment contracts.

[2] In the present case, the plaintiff's complaint alleges that the defendant offered the plaintiff's employees job opportunities which induced them to terminate their terminable at will contracts and, by locating these employees in their previously assigned territories, induced them to breach the non-competition clauses contained in their contracts with the plaintiff. The plaintiff contends that these allegations state a valid claim for tortious interference.

The mere fact that the plaintiff's employment contracts with the employees in question were terminable at will does not provide the defendant a defense to the plaintiff's claim for tortious interference. *Childress v. Abeles*, 240 N.C. at 678, 84 S.E. 2d at 184. Moreover, even though the employment contracts were terminable at will, the non-competition clauses contained therein were not. The non-competition clauses bound the employees for one year after termination of their employment with the plaintiff, and competition by the employees during that period in violation of the clauses would be a breach of contract.

The plaintiff's complaint reveals on its face, however, that the defendant was justified in offering the plaintiff's employees new jobs and locating them in their previously assigned territory.

The complaint alleges that the defendant left his position with the plaintiff, Peoples Life, to accept employment with a competing insurance company. His new job involved "develop[ing] the territory of eastern North and South Carolina."

We conclude that the hiring and placing of the plaintiff's former employees by the defendant for the purpose of developing the territory assigned to him by a company competing with the plaintiff amounted to justifiable interference. In reaching this conclusion, we recognize and apply the general principle that interference may be justified when the plaintiff and the defendant are competitors. *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176. *See also, Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 134 N.W. 2d 892 (1965); *Schonwald v. Ragains*, 32 Okla. 223, 122 P. 203 (1912); *Philadelphia Dairy Prod. v. Quaker City Ice Cream Co.*, 306 Pa. 164, 159 A. 3 (1932); *Thacker Coal & Coke Co. v. Burke*, 59 W.Va. 253, 53 S.E. 161 (1906). *Contra Moye v. Eure*, 21 N.C. App. 261, 205 S.E. 2d 221 (1974); *Overall Corp. v. Linen Supply, Inc.*, 8 N.C. App. 528, 174 S.E. 2d 659 (1970). Further, we find the well-reasoned opinion of Judge Learned Hand in *Triangle Film Corp. v. Artcraft Pictures Corp.*, 250 F. 981 (2d Cir. 1918) to be persuasive. Judge Hand, writing for the majority in that case, stated that public policy demands that absent some monopolistic purpose everyone has the right to offer better terms to another's employee, so long as the latter is free to leave. *Id.* A contrary result would be intolerable, both to the new employer who could use the employee more effectively and to the employee who might receive added pay. *Id.* To hold otherwise would unduly limit lawful competition. *Id.*

Later cases adopt the rationale of *Triangle Film*. The free enterprise system demands that competing employers be allowed to vie for the services of the "best and brightest" employees without fear of subsequent litigation for tortious interference. *See McCluer v. Super Maid Cook-Ware Corp.*, 62 F. 2d 426 (10th Cir. 1932); *Vincent Horwitz Co. v. Cooper*, 352 Pa. 7, 41 A. 2d 870 (1945); *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 67 Cal. Rptr. 19 (1968); *Coleman & Morris v. Pisciotta*, 107 N.Y.S. 2d 715, 279 A.D. 656 (1951). To restrict an employer's right to entice employees, bound only by terminable at will contracts, from their positions with a competitor or to restrict where those employees

may be put to work once they accept new employment savors strongly of oppression.

> Competition . . . is the life of trade. Every act done by a trader for the purpose of diverting trade from a rival, and attracting it to himself, is an act intentionally done, and, in so far as it is successful, to the injury of the rival in his business . . . . To hold such an act wrongful and illegal would be to stifle competition. Trade should be free and unrestricted; and hence every trader is left to conduct his business in his own way, and cannot be held accountable to a rival who suffers a loss of profits by anything he may do, so long as the methods he employs are not of a class of which fraud, misrepresentation, intimidation, coercion, obstruction, or molestation of the rival or his servants . . . are instances.

*Macauley Bros. v. Tierney*, 19 R.I. 255, 256, 33 A. 1, 2 (1895), *cited with approval in C. S. Smith Metro. Mkt. v. Lyons*, 16 Cal. 2d 389, 106 P. 2d 414 (1940); *Kingstron Trap Rock Co. v. International Union of Operating Engineers*, 129 N.J. Eq. 570, 19 A. 2d 661 (1941).

In refusing to recognize the plaintiff's claim for tortious interference with contractual rights, we do not leave employers without recourse. Employers' rights to protect their interests, by reasonable employment contracts, are recognized everywhere. A breach by an employee of a covenant not to compete, even in an employment contract terminable at will, affords the employer a claim for relief against the employee. *See, e.g., Kadis v. Britt*, 224 N.C. 154, 29 S.E. 2d 543 (1944). Further, the mere existence of a claim for breach of contract against such an employee does not automatically prevent the employer from having a valid claim for tortious interference. *Childress v. Abeles*, 240 N.C. at 678-79, 84 S.E. 2d at 184. If the employer can demonstrate that the interference was wrongful and without justification, an action also lies against the tortious interferer. *Id.*

### SECOND CLAIM

[3] In the plaintiff's second claim for relief it alleges that the defendant breached the covenant not to compete contained in his own terminable at will employment contract with the plaintiff. Pertinent allegations of the complaint are:

22. That pursuant to the terms of said contract between plaintiff, Peoples Security Life Insurance Company, and the defendant, Milton S. Hooks, Hooks agreed that upon termination he would, for a period of one year, refrain from "solicitation or servicing of policyholders of the Company . . . or in any way interfering with existing policies."

23. That the defendant, Milton S. Hooks, has interfered with plaintiff's business in violation of his contract by hiring 15 of plaintiff's insurance agents, 4 of its sales managers and the District Marketing Specialist thereby inducing them to terminate their employment with the plaintiff and leaving plaintiff without adequate means of servicing its policyholders and collecting its premiums.

The complaint does not allege that the defendant solicited or serviced policyholders of Peoples Life. Neither does the complaint allege that the defendant directly interfered with existing policies. Rather, it alleges that because the defendant induced certain of the plaintiff's employees to change employers, he generally "interfered with plaintiff's business." We conclude that the mere fact that the plaintiff may have been inconvenienced because the defendant hired its employees does not give rise to a legally recognizable claim against the defendant for breaching his covenant not to solicit or service the plaintiff's policyholders or interfere with its existing policies. We hold that the second claim in the complaint fails to allege facts sufficient to state a claim upon which relief may be granted.

We do not address the defendant's contention that the covenant not to compete in his employment contract with the plaintiff is unenforceable, since we need not answer that question in resolving the issues before us. We hold that the Court of Appeals did not err in affirming the trial court's dismissal of the plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. The decision of the Court of Appeals is affirmed.

Affirmed.

Justice MEYER dissenting.

Plaintiff's first claim against defendant in this lawsuit sounds in tortious interference with contract. In its opinion in this case, the majority holds in part that, because competition in business constitutes a justification for interfering with the contractual relationships of others, plaintiff's lawsuit against defendant must fail as a matter of law. It is my sincere belief that the law of North Carolina is not now, nor should it ever be, that business competition is recognized as a legal justification for behavior such as that displayed by defendant here. This case, in my view, was for the jury, and accordingly, I dissent.

The case, as a procedural matter, is before us by virtue of the trial judge's decision to grant defendant Hooks' motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. I note as an initial matter that the burden of the movant in a case such as that before us is substantial. A claim for relief should clearly not suffer dismissal unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim. *See Presnell v. Pell*, 298 N.C. 715, 260 S.E. 2d 611 (1979). Moreover, in construing the complaint, the accepted rule is to construe it liberally, with every reasonable intendment and presumption in favor of the plaintiff. *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176 (1954).

As the majority opinion correctly indicates, this Court, in its opinion in *Childress*, explained the nature of a claim for tortious interference with a contract. We defined its elements as follows:

> *First*, that a valid contract existed between the plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person. *Second*, that the outsider had knowledge of the plaintiff's contract with the third person. *Third*, that the outsider intentionally induced the third person not to perform his contract with the plaintiff. *Fourth*, that in so doing the outsider acted without justification. *Fifth*, that the outsider's act caused the plaintiff actual damages.

*Id.* at 674, 84 S.E. 2d at 181-82 (citations omitted). The majority, concluding in essence that under no set of facts presented by plaintiff could defendant have acted without justification, held

proper the trial court's decision to grant defendant's motion to dismiss pursuant to Rule 12(b)(6). I simply do not agree, for, in my view, all five of these prerequisites were potentially satisfied, and the case was therefore for the jury.

Before reaching the question of justification, I note as an aside that there is no question but that employment contracts *at will* are not treated any differently vis-a-vis the action in question here. In *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176, this Court held that the mere status of the contract as terminable at will does not defeat the plaintiff's cause of action for tortious interference. In so holding, our Court relied on the reasoning of the United States Supreme Court in the case of *Truax v. Raich*, 239 U.S. 33, 60 L.Ed. 131 (1915). In that case, it stated that "[t]he fact that employment is at the will of the parties, respectively, does not make it one at the will of others. . . . [B]y the weight of authority, the unjustified interference of third persons is actionable although the employment is at will." *Id.* at 38, 60 L.Ed. at 134.

As for the question of justification, I believe strongly that the majority is incorrect in its conclusion that competition in business such as that allegedly motivating defendant in this case is, under North Carolina law, a legal justification serving to eviscerate this or any other plaintiff's cause of action for tortious interference with contract. In my view, the law in this State is, and should be, that business competition is not such a justification and that, accordingly, cases such as that before us are not dismissible as a matter of law, but rather, are best left with a jury for decision.

It is admitted that this issue—specifically, whether business competition is a justification for interfering with the contractual relations of others—has produced divergent points of view amongst the jurisdictions of this nation. The majority quite correctly indicates that the law of several states and the view of the Restatement (Second) of Torts are supportive of its position in this matter. Moreover, citing dicta in this Court's decision in *Childress v. Abeles*, 240 N.C. 667, 84 S.E. 2d 176, it claims further that the law of our own State is consistent with the idea of business competition as a legal justification for contract interference. I take issue with this latter claim in the majority opin-

ion. In fact, the law currently is, and certainly should continue to be, to the contrary.

Though this Court has not addressed anything approaching the issue before us today since the *Childress* case, our own Court of Appeals has applied the reasoning from that decision on several occasions. In *Overall Corporation v. Linen Supply, Inc.*, 8 N.C. App. 528, 174 S.E. 2d 659 (1970), for example, plaintiff and defendant were corporate competitors in the industrial laundry business. Defendant induced one of plaintiff's employees to breach an employment contract as a route salesman with plaintiff and to enter a similar contract with defendant. The employee in question then solicited the business of plaintiff's customers, inducing them thereby to breach their contracts with plaintiff for laundry service. The Court of Appeals, in upholding plaintiff's award against defendant for tortious interference with contract, made the following significant statement:

> We see no valid reason for holding that a competitor is privileged to interfere wrongfully with contractual rights. If contracts otherwise binding are not secure from wrongful interference by competitors, they offer little certainty in business relations, and it is security from competition that often gives them value.

*Id.* at 531, 174 S.E. 2d at 661. This position, which the Court of Appeals subsequently affirmed in *Moye v. Eure*, 21 N.C. App. 261, 204 S.E. 2d 221 (1974), is one with which I agree.

If there is uncertainty as to what the law is in North Carolina on this question, there can be, in my view, no question as to what the law should be. The majority's position—that business competition justifies interference with contract—is, it seems to me, wrong for a number of significant policy reasons. First, the majority's holding today is severely at odds with the longstanding and historic principle of freedom of contract. The principle of freedom of contract rests on the premise that it is in the public interest to accord individuals broad powers to order their affairs through legally enforceable agreements. A. Farnsworth, *Contracts* § 5.1 (1982). In North Carolina, this vitally important principle has long been a part of our jurisprudential heritage. Under our law, parties are free to contract to anything as long as it is not illegal, unconscionable, or against the public interest. *Bicycle*

*Transit Authority, Inc. v. Bell,* 314 N.C. 219, 333 S.E. 2d 299 (1985).

Here, plaintiff sought to "order [its] affairs" by the insertion of legally enforceable covenants not to compete into its employment contracts with defendant and with those employees defendant eventually hired away. By virtue of these employment contracts, the affected employees were forbidden "to work upon or in any way interfere with any part of any account or territory upon which the Agent previously worked in the same State for the Company" for a period of one year. It is undisputed, moreover, that defendant induced the employees not only to terminate their employment contracts with plaintiff, but also to breach the non-compete clauses contained in those contracts. Yet, we are told by the majority that defendant's egregious conduct which induced the breach was a justifiable and nonactionable action because it was done in the name of business competition. This, in my view, is completely at odds with the important principle of freedom of contract.

Second, the majority opinion, which frustrates the covenant not to compete in this case and will also no doubt frustrate countless others already in existence, is not consistent with this Court's previous decisions concerning such covenants. Covenants not to compete, in the wake of the majority opinion here, will be eviscerated upon a showing that the breach in question was induced by a party citing business competition as his motivation. This will be particularly unfortunate where, as in some cases, though admittedly not here, defendant's new employer has gone to such lengths in inducing the breach as to completely insulate the breaching employee from liability by offering to pay any legal fees incurred and any judgment taken against him.

This insidious state of affairs hardly seems to jibe with this Court's oft-repeated conditional approval of covenants not to compete. Under the law of North Carolina, covenants not to compete are in fact *valid and enforceable* upon a showing that they are (1) in writing, (2) made a part of a contract of employment, (3) based on reasonable consideration, (4) reasonable both as to time and territory, and (5) not against public policy. *See A.E.P. Industries v. McClure,* 308 N.C. 393, 302 S.E. 2d 754 (1983). The majority's position in this case is clearly inconsistent with this tradition.

I take final issue with the majority's position that to allow a claim such as that pursued by plaintiff here would be to severely impede commerce. The majority states specifically that "to restrict an employer's right to entice employees . . . from their positions with a competitor or to restrict where those employees may be put to work once they accept new employment savors strongly of oppression." In my view, the majority's statement is grossly exaggerative, particularly given the facts of the case before us. In essence, under the terms of the covenants not to compete, defendant need wait only a year—a mere twelve months —before "stealing" plaintiff's employees to the benefit of his new employer's operation. This delay, giving credence to plaintiff's freedom to enter into and expect the enforcement of such agreements, could hardly be considered oppression.

In summary, the majority, in its opinion in this case, holds in part that because business competition is a legal justification for interfering with the contractual relationships of others, plaintiff's cause of action against this defendant must fail as a matter of law. In my view, this is not the law, nor should it be the law, in North Carolina. This case was for the jury, and the trial court therefore erred in entering judgment for defendant pursuant to Rule 12(b)(6). Accordingly, and with due respect, I must dissent.