SUN LIFE ASSURANCE COMPANY OF CANADA and Sun Life Assurance Company of Canada (U.S.), Plaintiffs,

v.

Robert M. COURY and Angelo P. Schiralli, Defendants.

No. 92–2688–CIV.

United States District Court, S.D. Florida.

Nov. 16, 1993.

3. As noted under the discussion of the *Pullman* doctrine, this case may involve issues concerning land use regulation.

Andrew Tramont, Jorden, Burt, Berenson & Klingensmith, Miami, FL, for plaintiffs.

Courtney B. Wilson, Coll Davidson Carter Smith Salter & Barkett, Miami, FL, for defendants.

### ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAIN-TIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (D.E. # 89) and Defendants' Motion for Partial Summary Judgment (D.E. # 127). Plaintiffs urge the Court to enter summary judgment in their favor on Counts I (breach of duty of loyalty) and III (civil conspiracy). Defendants, in their Motion, seek summary judgment on the same two counts, as well as on Count II (tortious interference). The issues were fully briefed and oral argument held.

Plaintiffs have submitted a statement of facts as to which they claim there is no genuine issue to be tried. After careful consideration, the Court finds that, taking as true all the facts in this statement and construing any ambiguities in favor of Plaintiffs, the conduct of which Defendants stand accused does not, under the circumstances, constitute an actionable breach of a duty of loyalty or tortious interference. Under the facts set forth by Plaintiff, Defendants explored new employment possibilities while in the employ of Plaintiffs. As part of their process of seeking new employment, they encouraged the agents who worked with them to follow them to their new place of

employment. Although the actions of Defendants injured Plaintiffs, Defendants did nothing that is legally actionable under Count I or II, both of which are challenged by Defendants. Defendants' request for summary judgment as to Count III must be denied because the conspiracy charge is dependent on other issues not before the Court on these motions for summary judgment.

## I. Factual Background

In 1991, Defendant Schiralli was a managing partner for Mutual Benefit Life Insurance Company ("Mutual Benefit") in South Florida. When Mutual Benefit encountered financial difficulties, he began exploring employment possibilities for himself and his associates at Plaintiffs' agency, Sun Life. In August of that year, Defendants Schiralli and Coury commenced employment with Plaintiffs to manage Sun Life's South Florida branch. They brought with them numerous former agents, managers, and staff employees of Mutual Benefit. In January 1992, at the suggestion of Defendant Schiralli, Plaintiffs hired Defendant Goodlad as a manager in the South Florida branch. In February 1992, again at the suggestion of Defendant Schiralli, Plaintiffs hired Lynda Cairo as a manager in the South Florida branch.

Between April and October 1992, Defendants engaged in meetings among themselves, with Sun life employees in the South Florida branch, and with representatives of other insurance companies to explore the advantages of employment with an insurance company other than Sun Life. Plaintiffs have detailed the various meetings in their Statement of Uncontroverted Facts. There was a meeting among Sun Life's South Florida management team to discuss the "positives and negatives" of Sun Life. Cairo was sent to evaluate the products of other companies for the purpose of exploring the possibility of changing employers. Schiralli began speaking to other insurance companies to "look[ ] for a new relationship." He and other Sun Life employees visited the headquarters of various insurers to explore a move of himself and the Sun Life employees to a competing insurance company. On these trips, members of his management team evaluated the products and the financial situations of the other companies. Defendants kept these trips and conversations with competing insurers secret from Sun Life. One of the insurance companies visited by Defendants reimbursed Defendants for their trip, describing it as a recruiting orientation. Defendant Schiralli was concerned about the legal ramifications of his activities because he was still an employee of Sun Life. He had sought from the prospective employers indemnification for legal expenses arising from any move of himself and his co-workers. One company had declined to indemnify him, but John Hancock Mutual Life Insurance Company ("Hancock") agreed to do so.

Schiralli continued to meet with Hancock to discuss "further details about a possible affiliating with John Hancock." On October 19, 1992, Schiralli submitted an employment application to Hancock for a position as Hancock's general agent in South Florida. His application included the following message: "Please treat this as highly confidential, and do not contact current employer (Sun Life) without my *prior* approval." The next day, Coury also submitted his application.

Before their applications had been accepted and before they had resigned from Sun Life, Schiralli and Coury organized a visit of a group of Sun Life's key agents to Hancock's Boston headquarters at Hancock's expense, which visit included a full day of meetings with Hancock officers, including Hancock's president. A similar visit of a second group occurred after Defendants' termination. Defendants also provided Hancock with past production figures of the agents working below them, as well as salary information. At least part of the production figures were derived from the agents' work at Sun Life, as distinguished from work at Mutual Benefit.

When Sun Life learned of the ongoing negotiations with Hancock, it terminated both Schiralli and Coury on October 23, 1992. On October 27, Defendants Schiralli and Coury invited all of Sun Life's South Florida agents to a meeting, where the two solicited and recruited them to join Hancock. They followed up that meeting with personal phone calls or meetings to solicit the employees to

follow them to Hancock. In the end, a large percentage of Sun Life employees—managers, agents, and staff—terminated their employment with Sun Life and followed Defendants to Hancock. .

### II. Breach of Duty of Loyalty and Fiduciary Duty

### A. Scope of the Duty, and Visits to Competing Companies

■ In Count I, Plaintiffs have charged that Defendants breached their respective duties of loyalty to Sun Life. Plaintiffs argue that Defendants' duties of loyalty included the obligation to act solely for the benefit of Sun Life. Plaintiffs argue that these duties were breached by Defendants' directing of subordinate employees to visit competing insurance companies in the search for a new employer. Plaintiffs argue that these trips constituted a breach because they provided no benefit to Sun Life, which was Defendants' employer at the time.

Plaintiffs' reading of the law, however, is too narrow. The law does not prohibit an employee or a group of employees from exploring employment opportunities with other potential employers. The facts set forth by Plaintiffs and summarized above do not constitute a breach of Defendants' duty of loyalty to Sun Life.

Plaintiffs further point to Defendants' organization of the two trips to Hancock's headquarters in Boston, as well as their "chaperoning" of the Sun Life agents during these visits (one of which occurred prior to Defendants' termination). Plaintiffs rely on the Restatement of Agency § 394, as well as comment (a) to that section, to argue that an agent may not act for persons whose interests conflict with those of the principal in matters in which the agent is employed. However, comment (e) to section 393 of the Restatement clearly states, "Even before the termination of the agency, [an agent] is entitled to make arrangements to compete...." The Restatement goes on to state, "[I]t is normally permissible for employees of a firm, or some of its partners, to agree among themselves, while still employed, that they will engage in competition with the firm at the end of the period specified in their em-

ployment contracts." *Id.* Section 394 is generally more applicable to situations where an employee, during the term of his employment, engages in competitive activity inimical to the interests of his employer.

Plaintiffs cite *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel,* 556 F.Supp. 1319 (S.D.Fla.1983), as indicating Defendants' actions would constitute a breach of their duty of loyalty. In contrast to the instant dispute, however, *Treasure Salvors* involved an employee who had engaged in actual competition during his employment. Thus, comment (e) to section 393 of the Restatement was not applicable there.

In the case at hand, Defendants did no more than is permissible under law. Had they already accepted employment with Hancock or were they otherwise acting as agents of Hancock, their activities would perhaps be unlawful. *See, e.g., Ins. Field Serv., Inc. v. White & White Inspection & Audit,* 384 So.2d 303, 308 (Fla.Dist.Ct.App.1980). However, such is not the case here, even construing all the facts in favor of Plaintiffs. Defendants were pursuing the possibility of employment with Hancock for themselves and their subordinate employees, but as a matter of law, they were not employees of Hancock and were not acting as agents of Hancock.

### B. Company Information

■ Plaintiffs claim that Defendants breached their duty of loyalty by providing competitors with confidential information regarding Sun Life's South Florida agents and operations. Defendants involved Sun Life employees in the decision-making process and arranged for them to meet with Hancock in order to encourage them to follow them there should they, the Defendants, choose to take employment with Hancock. Defendants also disclosed to Hancock the salaries and production figures of the agents whom Defendants hoped would follow them to Hancock; this was done to enable Hancock to evaluate the profitability of hiring Defendants.

As support for their position that Defendants' disclosures constituted a breach of

their duty of loyalty, Plaintiffs cite *Bancroft–Whitney Co. v. Glen,* 64 Cal.2d 327, 49 Cal. Rptr. 825, 411 P.2d 921 (1966). Of course, that case is not binding upon this Court, but even apart from this fact, *Bancroft–Whitney* differs from the case at hand in several important regards. The most important is that the defendant in *Bancroft–Whitney,* while still employed by the plaintiff, passed company information to a competing business to enable that competitor to enter into employment contracts with his co-workers. In the case at hand, by contrast, Defendants did not solicit the Sun Life employees to sign contracts with Hancock while Defendants were still employed by Sun Life. Defendants insist that the only contracts eventually signed by the employees were with "Schiralli and Coury Associates", an entity created to act as a Hancock general agent and one which did not exist prior to November 1, 1992. Even discounting this assertion as appropriate in this summary judgment context, there is no evidence in the record that can be construed in Plaintiffs' favor which would indicate that the employees were solicited to sign contracts with Hancock while Defendants were employed by Sun Life or that the disclosure of financial information played a role in enticing the agents from Sun Life's employ.

As for the "rules of the game" as they apply to the disclosure of company information, one of Plaintiff's corporate designees has testified at his deposition that he does not consider it improper or unethical for a manager being recruited by Sun Life to discuss the production of his current agency, as well as indicating which producers will likely follow him to Sun Life. Defs.' Mem. in Supp. at 17 (quoting Elson Hung Dep. at 58, 61). Even if one discounts this testimony given by Plaintiffs' representative, there is no evidence to indicate that the disclosure of the information at issue is considered to be improper within the insurance industry.

### C. *Lack of Notice*

■ Plaintiffs claim that Defendants breached their duty of loyalty by failing to protect Sun Life from the simultaneous departure of all key management persons; Plaintiffs argue that Defendants did not provide Sun Life with sufficient notice to afford it an opportunity to hire and train replacements. However, the record indicates that several of the managers were fired, and others were, in effect, forced to resign. There is no evidence to indicate that if Sun Life had not fired Schiralli and Coury, they would not have provided Sun Life with sufficient notice prior to their departure and that the other managers (Goodlad, Cairo, and William Corry) would not have waited until later to resign.

### D. *The Rookie Plaque*

■ Plaintiffs point to an incident where Defendants concealed from one of Sun Life's agents a plaque recognizing him as "Rookie of the Year". Defendants' motivations in not passing along the plaque to the employee were to increase the likelihood the employee would remain dissatisfied with Sun Life and would follow Defendants to Hancock. The evidence of this event in the record is incomplete. There exists an affidavit of William Corry, a sales manager; however, on this matter Plaintiffs have no deposition testimony of Mark Harris (the affected employee) and Debra Rowland (Schiralli's secretary, who received the plaque and passed it to Schiralli), and the Court has declined to order new depositions to proceed now that the pre-trial conference has been held. Nevertheless, even assuming, for the purposes of this motion, that Defendants in fact deliberately withheld the plaque with the intention of increasing the likelihood the employee would follow Defendants to Hancock, the Court finds that this act—alone or in conjunction with the other actions charged in Count I of the Amended Complaint—does not rise to such a level as would subject Defendants to pecuniary liability for breach of a duty of loyalty.

### D. *Post-termination Group Meeting*

■ Plaintiffs further claim that Defendants breached their duty of loyalty by soliciting virtually all of Sun Life's agents at the group meeting on October 27, 1992. Plaintiffs cite section 393 of the Restatement of Agency that "[a]n employee is subject to liability if, before or after leaving the employ-

ment, he causes fellow employees to break their contracts with the employer." However, there is no evidence in the record to indicate the Sun Life employees solicited by Defendants were anything more than at-will employees. Without an employment contract, section 393 of the Restatement is inapplicable.

### III. Tortious Interference

In their Complaint, Plaintiffs allege that Defendants intentionally interfered with Sun Life's business relations by soliciting, inducing, and causing certain persons to breach and terminate their business relations with Sun Life. These persons include Sun Life's branch managers, sales and functional managers, sales representatives, career agents, and employees in Sun Life's South Florida branch. Plaintiffs further allege that by interfering with these relations, Defendants breached their respective covenants not to compete with Sun Life.

The issue of whether Defendants breached a covenant not to compete has not been made the subject of the parties' summary judgment motions. This issue will be considered by the Court at trial.

It has been pointed out above that the agents who were allegedly induced by Defendants to terminate their relationship with Sun Life in favor of accepting a position with Hancock were at-will employees of Sun Life. In Florida, relationships that are terminable at will are protected from intentional, unjustified interference but not from lawful competition. *See, e.g., G.M. Brod & Co. v. U.S. Home Corp.*, 759 F.2d 1526, 1534 (11th Cir. 1985); *Unistar Corp. v. Child*, 415 So.2d 733, 735 (Fla.Dist.Ct.App.1982) (*en banc*). Viewing the facts of the instant case in the light most favorable to Plaintiffs, the actions of Defendants do not constitute an unjustified interference with the relationships at issue.

The cases cited by Defendants in their Memorandum of Law in Support of their Motion for Partial Summary Judgment primarily address tortious interference as it relates to soliciting clients of a former employer. *See, e.g., Langford v. Rotech Oxygen and Medical Equip., Inc.*, 541 So.2d 1267, *modified on reh'g*, (Fla.Dist.Ct.App.1989); *Mit-*

*tenzwei v. Indus. Waste Serv., Inc.*, 618 So.2d 328 (Fla.Dist.Ct.App.1993). However, the language of the cases offers some indication of the low level of protection afforded to at-will contracts by the tortious interference cause of action.

More on point, but from a state other than Florida, is the case of *Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 367 S.E.2d 647 (1988). Although not binding on this Court, that case involved the same issues as are presently before the Court, and North Carolina law uses similar language to indicate the degree to which at-will contracts are protected against tortious interference. *Id.*, 367 S.E.2d at 650. In *Peoples Security*, the North Carolina Supreme Court dismissed a claim by an insurance company against its former district manager, who had hired away many of its agents and sales managers to work for a competing insurance company. The court was concerned with stifling competition and free enterprise, and it limited the tortious interference cause of action to cases of "fraud, misrepresentation, intimidation, coercion, obstruction, or molestation". *Id.* at 651.

In any event, against the background of the Florida and North Carolina cases, which all narrowly circumscribe the scenarios where tortious interference with an at-will contract will be found, this Court finds that in the instant situation, viewing the facts in the light most favorable to Plaintiffs, Defendants' actions did not constitute tortious interference with the at-will contractual relationships that existed between Sun Life and its agents and other employees.

Plaintiffs urge the Court not to grant summary judgment on this issue because resolution of this issue requires a factual inquiry into the "rules of the game". *G.M. Brod & Co.*, 759 F.2d at 1535 (11th Cir.1985). However, there is no evidence in the record that can be construed in favor of Plaintiffs to indicate activity such as that of which Defendants stand accused is not sanctioned by the "rules of the game." In fact, the uncontroverted facts indicate that Sun Life originally hired Defendants away from Mutual Benefit under circumstances similar to the manner in which Defendants have been hired away

from Sun Life. While a defendant has the burden to establish that its interference was justified, *G.M. Brod & Co.,* 759 F.2d at 1535, a plaintiff cannot rest on his pleadings when faced with a motion for summary judgment but must offer some affirmative evidence to counter a defendant's *prima facie* showing that such activity was sanctioned by the rules of the game. This the Plaintiffs have failed to do. The Court finds that all the facts, construed in the light most favorable to Plaintiffs, indicate that the activity of Defendants did not constitute unjustified interference with Plaintiffs' employment relationships.

### III. Civil Conspiracy

Plaintiffs charge that Defendants are liable to Sun Life for civil conspiracy. Plaintiffs contend that all of the elements of a civil conspiracy exist. The second of the elements listed by Plaintiffs is that the Defendants "set out to accomplish their objective through unlawful means, *i.e.,* through the numerous breaches of duty and disloyal acts" alleged in their Complaint.

The Court has found that the means employed by Defendants were not unlawful breaches of duty. Consequently, the charge of civil conspiracy on the basis of such breaches cannot be sustained. However, Plaintiffs also assert additional grounds as the basis for the conspiracy charge, including Defendants' alleged breach of contract. Because not all of the grounds for the conspiracy charge have been resolved by the Court in this summary judgment order, the civil conspiracy charge cannot be resolved at this stage.

### IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully informed in the premises, it is

ORDERED, ADJUDGED, and DECREED that Defendants' Motion for Partial Summary Judgment be, and the same is hereby, GRANTED in part and DENIED in part. Summary judgment is GRANTED as to Counts I (breach of duty of loyalty) and II (tortious interference), but DENIED as to Count III (civil conspiracy). It is further

ORDERED, ADJUDGED, and DECREED that Plaintiffs' Motion for Summary Judgment be, and the same is hereby, DENIED.

DONE and ORDERED.