Lenders Funding, LLC v. WAIM Mgmt. Co., Inc., 2018 NCBC 67.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 8592

LENDERS FUNDING, LLC,

      Plaintiff,

v.

WAIM MANAGEMENT COMPANY,
INC.; DONNA M. CHRISTIAN; and
LAURENCE M. GIBNEY,

      Defendants,

   and

LAURENCE M. GIBNEY,

      Defendant/
      Counterclaimant,

v.

LENDERS FUNDING, LLC,

      Plaintiff/
      Counterclaim Defendant.

**ORDER AND OPINION ON
COUNTERCLAIM DEFENDANT'S
MOTION FOR JUDGMENT
ON THE PLEADINGS**

1. This case arises out of a contract dispute between Plaintiff Lenders Funding, LLC ("Lenders Funding") and Defendant WAIM Management Company, Inc. ("WAIM"). Lenders Funding asserts ten claims against WAIM and two of its principals, Defendants Laurence Gibney and Donna Christian. In response, Gibney asserts counterclaims for tortious interference with contract and unfair or deceptive trade practices.

2. Lenders Funding now moves for judgment on the pleadings under North Carolina Rule of Civil Procedure 12(c) as to each of Gibney's counterclaims. For the reasons discussed below, the Court **DENIES** the motion.

*Tuggle Duggins P.A., by Jeffrey S. Southerland and Jaye E. Bingham-Hinch, for Plaintiff/Counterclaim Defendant Lenders Funding, LLC.*

*Carruthers & Roth, P.A., by J. Patrick Haywood and Rachel S. Decker, for Defendant/Counterclaimant Laurence M. Gibney.*

Conrad, Judge.

## I.
## BACKGROUND

3. The Court does not make findings of fact on a Rule 12(c) motion. The following factual summary is drawn from the relevant allegations in the pleadings.

4. The contract underlying this litigation is a secured lending and refactoring agreement ("Agreement"), originally executed in August 2013 by WAIM and CapFlow Funding Group Managers, LLC ("CapFlow"). (Compl. ¶¶ 10–11, ECF No. 4; Answer ¶¶ 10–11, ECF No. 16.) As part of the Agreement, WAIM obtained a line of credit with a borrowing base tied to the value of its accounts receivable. (Compl. ¶ 11 & Ex. A 3–4, § 2(a), Schedule 1.) Lenders Funding acquired CapFlow's interests at the end of 2014, though CapFlow continued to service the Agreement as Lenders Funding's agent for nearly two more years. (Compl. ¶¶ 14–15, 20 & Ex. B.)

5. When Lenders Funding began servicing the Agreement in late 2016, it "became uncomfortable" with the way WAIM collected and reported its accounts receivable. (Compl. ¶¶ 20–21.) According to Lenders Funding, WAIM collected amounts owed by certain debtors, failed to remit the amounts to Lenders Funding, and then falsely reported that the debtors continued to have outstanding balances. (Compl. ¶¶ 23, 27–29, 32.) Lenders Funding alleges that it confronted Gibney about the discrepancies and that Gibney admitted to overstating the value of WAIM's

accounts receivable in certifications he provided to Lenders Funding. (Compl. ¶¶ 27–28.)

6. Lenders Funding filed this suit in October 2017, alleging that WAIM inflated its accounts receivable for the purpose of inducing Lenders Funding to provide additional loans and that WAIM had exceeded its "allowable borrowing base by" more than $1 million. (Compl. ¶ 33.) Contending that WAIM is in default, Lenders Funding asserts ten claims for relief, including fraud and breach of contract. (Compl. ¶¶ 20–21.)

7. In their Answer, Defendants deny any wrongdoing. They contend, among other things, that Lenders Funding was aware of WAIM's collection practices, knew the status of WAIM's accounts receivable, and in fact approved of WAIM's actions. (*See* Answer 6; *see also* Compl. ¶ 31; Answer ¶ 31.)

8. Gibney also asserts counterclaims, which are the subject of the pending motion. According to Gibney, Lenders Funding demanded that he pay WAIM's alleged debt and, when he refused, threatened to "find a way to hold [him] responsible." (Countercl. ¶¶ 5, 7–9, ECF No. 16.) Lenders Funding made good on the threat, Gibney alleges, by interfering with Gibney's personal relationship with Sterling Commercial Credit, LLC ("Sterling"). (Countercl. ¶¶ 9–10, 12–13.) Gibney alleges that Sterling pays him commissions for client referrals; that Lenders Funding pressured Sterling to pay the commissions to it instead of to Gibney; and that Sterling did so. (Countercl. ¶¶ 10–13.) Gibney contends that Lenders Funding's actions constitute tortious interference with contract and unfair or deceptive trade practices.

9. Lenders Funding moved for judgment on the pleadings as to Gibney's counterclaims on April 9, 2018. The motion has been fully briefed, and the Court held a hearing on June 6, 2018. This matter is ripe for determination.

## II.
## ANALYSIS

10. "A motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008). "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974).

### A. Tortious Interference

11. To state a claim for tortious interference with contract, Gibney must allege that: (1) he has a valid contract with Sterling; (2) Lenders Funding knew of the contract; (3) Lenders Funding intentionally induced Sterling not to perform the contract; (4) and in doing so acted without justification; (5) resulting in actual damage to Gibney. *See, e.g.*, *Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 498, 411 S.E.2d 916, 924 (1992) (quotation omitted). For purposes of this motion, Lenders Funding disputes only the fourth element—whether it acted without justification.

12. This Court recently noted that "North Carolina's case law paints a less-than-clear picture" when it comes to distinguishing between justified and unjustified interference with contract. *K&M Collision, LLC v. N.C. Farm Bureau Mut. Ins. Co.*,

2017 NCBC LEXIS 109, at *21 (N.C. Super. Ct. Nov. 21, 2017). Part of the challenge is that tortious interference with contract is a diverse tort. It covers employment relationships, market competition, and all manner of other interpersonal agreements. The factors that justify (or condemn) interference in one context may not apply in another.[*]

13. Perhaps for that reason, our appellate courts have left room for case-by-case development, defining justification loosely to mean any "just, lawful excuse" for taking action. *Childress v. Abeles*, 240 N.C. 667, 675, 84 S.E.2d 176, 182 (1954) (citation and quotation marks omitted). Put another way, a person "acts without justification in inducing [a] breach of contract . . . if he has no sufficient lawful reason for his conduct." *Id.* Separating lawful from unlawful excuses depends on the nature of the underlying contract, the relationship between the relevant actors, and societal interests in permitting or deterring the conduct. *See Peoples Sec. Life Ins. Co. v. Hooks*, 322 N.C. 216, 221, 367 S.E.2d 647, 650 (1988).

14. In some contexts, the public interest strongly favors protecting the freedom of individuals and entities to interfere with others' contractual rights—so much so that the interfering conduct is deemed privileged. As an example, "competition in business constitutes justifiable interference in another's business relations and is not

---

[*] Some States treat tortious interference with contract and tortious interference with employment as distinct torts. *See, e.g.*, *Dryden v. Cincinnati Bell Tel.*, 734 N.E.2d 409, 413 (Ohio Ct. App. 1999) ("Ohio law recognizes both a claim of tortious interference with contractual (or business) relations and a claim of wrongful interference with an employment relationship."); *Leemis v. Russell*, No. W1999-00352-COA-R3-CV, 2000 Tenn. App. LEXIS 348, at *10 n.3 (Tenn. Ct. App. 2000) ("[T]he tort of intentional interference with employment relations is a separate and distinct cause of action from the tort of inducement or procurement of a breach of contract.").

actionable so long as it is carried on in furtherance of one's own interest and by means that are lawful." *Id.* at 221, 367 S.E.2d at 650. Likewise, corporate fiduciaries enjoy a qualified privilege "to interfere with contractual relations between the corporation and a third party," again so long as the fiduciary is not acting unlawfully or in his own interest. *Wilson v. McClenny*, 262 N.C. 121, 133, 136 S.E.2d 569, 578 (1964); *see also Embree*, 330 N.C. at 501, 411 S.E.2d at 926. Where the allegations in the complaint reveal the existence of a privilege and offer no allegations to support the loss of that privilege, dismissal may be appropriate. *See, e.g.*, *Peoples Sec. Life Ins.*, 322 N.C. at 221–22, 367 S.E.2d at 650; *Lendingtree, LLC v. Intercontinental Capital Grp., Inc.*, 2017 NCBC LEXIS 54, at *11–12 (N.C. Super. Ct. June 23, 2017); *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at *16–17 (N.C. Super. Ct. Mar. 27, 2017).

15. This isn't such a case. There are no allegations in the counterclaim to suggest that Lenders Funding enjoys a privilege to interfere with contractual relations between Gibney and Sterling. Lenders Funding and Gibney are not competitors, and Lenders Funding has no insider or fiduciary status with Sterling. Thus, the only question is whether Gibney has adequately alleged that Lenders Funding had "no sufficient lawful reason for [its] conduct." *Childress*, 240 N.C. at 675, 84 S.E.2d at 182.

16. He has. The counterclaim alleges that Lenders Funding "repeatedly demanded" that Gibney pay WAIM's alleged debt, "even though [he] had no legal obligations to do so." (Countercl. ¶ 7.) It further alleges that, when Gibney refused,

Lenders Funding threatened him with legal action and stated it "would find a way to hold [him] responsible for" WAIM's obligations. (Countercl. ¶ 9.) Taken as true, these allegations show that Lenders Funding interfered with Gibney's relationship with Sterling for the purpose of collecting a debt that Gibney had no duty to pay. This is sufficient at the pleading stage to show that Lenders Funding acted without justification.

17. Lenders Funding insists that its actions were justified because it had a legitimate business interest in collecting WAIM's alleged debt and because Gibney misrepresented WAIM's accounts receivable. (*See* Lenders Funding's Br. in Supp. of Mot. for J. on the Pleads. 14 ["LF Br."], ECF No. 57.) But Gibney denies any misrepresentation. Even assuming Gibney's alleged fraud could serve as justification for Lenders Funding's actions, it would be inappropriate to resolve the issue at this early stage. Nothing in the pleadings establishes, as a matter of law, that Lenders Funding was justified in seeking to collect *WAIM's* debt from *Gibney* by interfering with his personal contractual relationships.

18. Lenders Funding also points to the oft-stated rule that "the complaint must admit of no motive for interference other than malice." *E.g.*, *Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 674, 541 S.E.2d 733, 738 (2001); *Kerry Bodenhamer Farms*, 2017 NCBC LEXIS 27, at *16. According to Lenders Funding, Gibney's counterclaim fails this standard because its allegations of malice are conclusory. (*See* LF Br. 14.)

19. Malice is a concept that tends to confuse more than illuminate. The North Carolina Supreme Court long ago made clear it is not necessary "to allege and prove actual malice in the sense of personal hatred, ill will, or spite." *Childress*, 240 N.C. at 675, 84 S.E.2d at 182. What matters is *legal* malice—"the intentional doing of the harmful act without legal justification." *Id.* Legal malice "is necessarily present in all cases where the second, third, and fourth elements of" a claim for tortious interference with contract are met. *Id.* at 676, 84 S.E.2d at 182.

20. As discussed above, Lenders Funding does not challenge the second and third elements, and Gibney has adequately alleged the fourth element. Furthermore, the allegations that Lenders Funding had no sufficient lawful reason for inducing Sterling to breach its contract with Gibney are not conclusory. North Carolina law does not require Gibney to allege malice as a separate, additional element of the tort.

21. The Court therefore concludes that Gibney has stated a claim for tortious interference with contract. The motion to dismiss this claim is denied.

## B. Other Counterclaims

22. Lenders Funding also moves to dismiss Gibney's other counterclaims, including his counterclaim for unfair or deceptive trade practices. Its only argument is that all of Gibney's counterclaims must be dismissed if the claim for tortious interference is dismissed. (*See* LF Br. 15; Lenders Funding's Reply Br. Supp. Mot. for J. on the Pleads. 7–9, ECF No. 64.) Having concluded that Gibney has stated a claim for tortious interference, the Court also denies the motion to dismiss Gibney's

other counterclaims.  *See K&M Collision,* 2017 NCBC LEXIS 109, at *30 (citations omitted).

## III.
## CONCLUSION

23. For these reasons, the Court **DENIES** the motion to dismiss.


This the 6th day of July, 2018.


/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases