**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BAXTER RESEARCH MEDICAL,
INCORPORATED,
Plaintiff-Appellant,

v.

MEDTRONIC, INCORPORATED,
Defendant-Appellee,

and

KOL BIO-MEDICAL INSTRUMENTS,
INCORPORATED; ROGER S. KOLASINSKI;

No. 98-1608

TIMOTHY D.C. MCINERNEY;
MICHAEL C. WHITAKER,
Defendants,

TIM HOLLY; TONY ANTONACCIO;
ROBERT CURRAN; DONNA EARLEY;
GLENN CONSOR; KATHY KEARNS;
STEVE ARCHIBALD; JAKE HOLTZINGER;
R. J. KUZNITZ; BRIAN DOORLEY;
BRUCE ANGESKI,
Intervenors-Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-97-1117-A)

Argued: January 27, 1999

Decided: February 24, 1999

Before WILKINSON, Chief Judge, and NIEMEYER and
TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Warren Eugene Zirkle, MCGUIRE, WOODS, BATTLE
& BOOTHE, L.L.P., Richmond, Virginia, for Appellant. Bernard
Joseph DiMuro, DIMURO, GINSBERG & LIEBERMAN, Alexan-
dria, Virginia, for Appellee. **ON BRIEF:** Darryl S. Lew, Robert M.
Tyler, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Rich-
mond, Virginia, for Appellant. Michael E. Barnsback, Elizabeth H.
Cronise, DIMURO, GINSBERG & LIEBERMAN, Alexandria, Vir-
ginia; David C. Forsberg, J. Patrick McDavitt, Kathleen Erickson
DiGiorno, BRIGGS & MORGAN, Saint Paul, Minnesota, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Baxter Research Medical, Inc. appeals the grant of summary judg-
ment in favor of appellee Medtronic, Inc. on Baxter's tortious inter-
ference with contract claim. Baxter argues that Medtronic tortiously
interfered by hiring away the sales force of one of Baxter's distribu-
tors. Because Virginia law requires a contract breach to support a tor-
tious interference with contract claim, and we find no breach, we
affirm the judgment of the district court.

I.

In 1993 KOL Bio-Medical Instruments, Inc. signed an exclusive
distributorship agreement with Research Medical, Inc. (RMI) under
which KOL was to sell RMI's cardiovascular surgical supplies in

2

much of the East and Southeast. The agreement provided that KOL was to render its "best efforts" to "promote, market and advertise" RMI's products, and that it was not to compete with RMI by manufacturing competing products or selling the goods of a manufacturer that did. The contract allowed either party to terminate the relationship without cause. If KOL desired to terminate, the agreement required that it provide RMI with six months notice, a period during which KOL's best efforts obligation continued. KOL's covenant not to compete extended twelve months past the notice of termination date.

For a few years, the relationship proceeded well. In late 1996, however, Baxter International, a large manufacturer of surgical supplies, announced that it was purchasing RMI. KOL became concerned that it would lose its distributorship because Baxter had a history of using a direct sales force to sell its products. At the same time, the change to managed care began to erode the profits KOL generated from its sales of cardiovascular products. KOL thus made the decision to exit the cardiovascular products market.

In early 1997 KOL approached Medtronic, another medical device manufacturer, to gauge its interest in acquiring KOL. Medtronic proposed instead that it pay KOL to assist Medtronic in acquiring KOL's cardiovascular sales force. The parties signed a contract wherein Medtronic agreed to pay KOL $6 million for the right to employ KOL's cardiovascular sales team, $4.5 million of which hinged on the final number of salesmen who would ultimately join Medtronic. For its part, KOL agreed to release its salesmen from their covenants not to compete with KOL, sign its own covenant not to compete with Medtronic to begin after its six-month termination period with Baxter ended, and to "use all reasonable efforts to encourage each KOL Sales Representative to accept employment with Medtronic." The agreement also provided that KOL would "fully perform" its obligations under its distributorship agreement with Baxter.

On June 23, 1997, KOL gave its notice of termination to Baxter. Shortly thereafter, KOL informed its sales representatives that, if they joined Medtronic, KOL would release them from their covenants not to compete and pay each a sizable severance bonus. Each of KOL's eleven cardiovascular salesmen joined Medtronic. In their place KOL

3

substituted three of its principals and its critical care sales force -- a group selling a separate product line. During the termination period KOL's sales of RMI products totaled $3.5 million, an 11.9% increase over the same six-month period of the previous year.

Baxter brought suit in the Federal District Court for the Eastern District of Virginia alleging, inter alia, that Medtronic tortiously interfered with Baxter's distributorship agreement with KOL. The district court, after finding that KOL did not breach the agreement, granted summary judgment to KOL. Baxter appeals, and we affirm.

II.

Baxter claims that Medtronic tortiously interfered with its distributorship agreement with KOL. Under Virginia law, one must demonstrate a contract breach to support a tortious interference claim. Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985). We hold that Baxter cannot demonstrate such a breach.

A.

Initially, Baxter alleges that KOL breached the contract's best efforts clause. Paragraph 3.A of the contract provided that "[t]he Distributor shall use its best efforts to promote, market and advertise the sale of the Products in the Territory." When KOL released its cardiovascular team, it replaced it with its three principals who were fully trained in and who possessed extensive knowledge of the cardiovascular products market. In addition, KOL used its critical care sales force which already sold similar products to the same accounts. Together, this sales force generated $3.5 million in sales, an 11.9% increase over the same six-month period of the previous year and more than KOL had ever sold in any six-month period in its entire history with RMI. Nevertheless, Baxter contends that KOL failed to provide its best efforts because it released its cardiovascular sales force and replaced it with an inferior team.

Baxter's reading of the contract contradicts its plain language. The best efforts clause pertains to nothing more than efforts to "promote, market and advertise" Baxter's products. It says nothing about per-

4

sonnel. Indeed, its silence should come as no surprise since another provision of the contract, Paragraph 3.B, deals specifically with personnel. Paragraph 3.B provides that "[t]he Distributor shall employ competent and professional sales personnel." Interpreting the best efforts clause to contain a personnel component would render the personnel clause superfluous. And reading the two clauses together, as we must, leads to the conclusion that the best efforts clause means nothing more than KOL is to provide its best efforts with the people it has. The personnel clause dictates their qualifications.[1]

Baxter, however, seeks to convert the best efforts clause into a repository for unbargained-for contract conditions. Baxter maintains that the best efforts clause barred KOL's efforts to help its sales representatives find jobs after KOL decided to exit the business. No reading of the words "best efforts to promote, market and advertise" could support such a restriction. If Baxter desired a contract with these terms, it was free to negotiate for them. This court, however, is not free to rewrite the bargain of the parties.

Baxter's reliance on PRC Realty Systems, Inc. v. National Association of Realtors, Inc. does not change our analysis. 766 F. Supp. 453 (E.D. Va. 1991), aff'd in pertinent part, 972 F.2d 341 (4th Cir. 1992) (unpublished table decision). In PRC Realty, a distributor obligated itself to provide its best efforts to promote the products of two competing manufacturers. Id. at 460. The court held that such a dual obligation violated the best efforts clause. Id. Baxter contends that KOL impermissibly attempted to "serve two masters" when it agreed to use all reasonable efforts to ensure that its salesmen joined Medtronic while it simultaneously was under a best efforts contract with Baxter. The rule in PRC Realty, however, is inapposite. KOL made no agreement to serve a Baxter competitor. Rather it successfully sold Baxter products. The most that can be said is that KOL released its cardiovascular sales representatives. It is true that it released them to one of Baxter's competitors, but that act did not run afoul of any contractual provision.

_____

[1] Baxter does not argue that KOL violated the personnel clause.

5

B.

Baxter also claims that KOL breached its covenant not to compete. The distributorship contract provided that "[d]uring the term of this Agreement, Distributor covenants not to manufacture or purchase from third parties for resale or to act as a representative or agent for third parties with respect to products which are directly competitive with Manufacturer's Products." Under the contract, KOL also agreed to "a twelve (12) month non-compete of Manufacturer's Products from the day of [KOL's] termination notice." Again, Baxter maintains that KOL breached these provisions because it released its sales force to Medtronic.

As with the best efforts clause, Baxter's argument defies the plain language of the contract. The covenant not to compete is between Baxter and KOL; it makes no provision for members of KOL's sales force. It thus does not prevent individual salesmen from shifting to a competitor to sell its products. Baxter seeks for a second time to transform a clause for which it bargained -- a covenant restricting KOL's ability to sell for a competitor -- into one for which it did not -- a pass-through covenant restricting KOL's sales force from leaving to work for a competitor. The place for Baxter to strike such a bargain was at the conference table, not in this court.

It is clear that Baxter cannot demonstrate that KOL violated the covenant not to compete. KOL did not manufacture competing products or represent another manufacturer that did. Indeed, the only evidence presented at trial demonstrated that KOL sold $3.5 million in Baxter's products during the six-month termination period. Without some showing that KOL began to sell for a competitor, Baxter cannot establish that KOL breached the agreement.[2]

_____

[2] Baxter also appeals the district court's grant of summary judgment to Medtronic on Baxter's tortious interference with economic advantage claim. Baxter maintains that Medtronic interfered with Baxter's relationships with the end-users of its products by purchasing the rights to KOL's sales force. To demonstrate such a claim, Baxter must show the existence of a business relationship or its expectancy. Commercial Bus. Sys. v. Halifax Corp., 484 S.E.2d 892, 896 (Va. 1997). We agree with the district court that Baxter had no relationship or expectancy of one with the end-users of its products because they bought only from KOL.

6

III.

Here Baxter seeks to use tort law to restructure contractual commitments. In particular, Baxter seeks to bar KOL's efforts to improve the lot of its employees and Medtronic's efforts to improve its workforce. "Nobody has ever thought, so far as we can find, that in the absence of some monopolistic purpose every one has not the right to offer better terms to another's employe, so long as the latter is free to leave. The result of the contrary would be intolerable, both to such employers as could use the employe more effectively and to such employes as might receive added pay. It would put an end to any kind of competition." Triangle Film Corp. v. Artcraft Pictures Corp., 250 F. 981, 982 (2d Cir. 1918). Here, Medtronic engaged in permissible, albeit aggressive, competition. Baxter may wish it had an agreement that prevented this competition, but the one for which it bargained did not do so. The judgment of the district court is hereby

AFFIRMED.

7